# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHARLES BLACKWELL,

     Plaintiff,

-v-

CITY OF HAMTRAMCK and
JAMES PETER ALLEN, SR.,
in his individual capacity,

     Defendants.

Case No. 21-cv-12284

Hon. Mark A. Goldsmith
Mag. Kimberly G. Altman

<div style="border:1px solid black">

**James Allen's
Motion to Dismiss**

</div>

*Counsel for Plaintiff:*

Ernst Charara & Lovell, PLC
- Kevin Ernst (P44223)
- Hannah R. Fielstra
645 Griswold, Suite 4100
Detroit, Michigan 48226
Phone: (313) 965-5555
E-Mail: kevin@ecllaw.com
E-Mail: hannah@ecllaw.com


*Co-Counsel for Plaintiff:*

Sugar Law Center
- Tony D. Paris (P71525)
4605 Cass Avenue, 2nd Floor
Detroit, Michigan 48201
Phone: (313) 993-4505
E-Mail: paris@sugarlaw.org


*Counsel for Defendant Allen:*

Collins Einhorn Farrell PC
- Theresa M. Asoklis (P42709)
- Lindsey A. Peck (P74579)
4000 Town Center, 9th Floor
Southfield, Michigan 48075
Phone: (248) 355-4141
E-Mail: theresa.asoklis@ceflawyers.com
E-Mail: lindsey.peck@ceflawyers.com


*Counsel for Defendant Hamtramck:*

Schenk & Bruetsch PLC
- Marc A. Deldin (P71041)
211 West Fort, Suite 1410
Detroit, Michigan 48226
Phone: (313) 774-1000
E-Mail: marc.deldin@sbdetroit.com

Defendant, James Allen, moves for dismissal of the complaint filed by Plaintiff, Charles

Blackwell. He relies on Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as the

authority in the attached brief.

In accordance with Local Rule 7.1(a), Allen's counsel certifies that she attempted to

obtain concurrence on November 10, 2021. Blackwell's counsel declined to concur.

/s/ *Theresa M. Asoklis*
Theresa M. Asoklis (P42709)
Collins Einhorn Farrell PC
4000 Town Center, 9th Floor
Southfield, Michigan 48075
Phone: (248) 355-4141
E-Mail: theresa.asoklis@ceflawyers.com
Counsel for James Allen

Dated: November 11, 2021

—1—

<div align="center">

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

</div>

---

CHARLES BLACKWELL,

    Plaintiff,

-v-

CITY OF HAMTRAMCK and
JAMES PETER ALLEN, SR.,
in his individual capacity,

    Defendants.

Case No. 21-cv-12284

Hon. Mark A. Goldsmith
Mag. Kimberly G. Altman

<div style="border:1px solid black; padding:8px; text-align:center;">

**Brief in Support
of James Allen's
Motion to Dismiss**

</div>

---

*Counsel for Plaintiff:*

Ernst Charara & Lovell, PLC
- Kevin Ernst (P44223)
- Hannah R. Fielstra
645 Griswold, Suite 4100
Detroit, Michigan 48226
Phone: (313) 965-5555
E-Mail: kevin@ecllaw.com
E-Mail: hannah@ecllaw.com


*Co-Counsel for Plaintiff:*

Sugar Law Center
- Tony D. Paris (P71525)
4605 Cass Avenue, 2nd Floor
Detroit, Michigan 48201
Phone: (313) 993-4505
E-Mail: paris@sugarlaw.org


*Counsel for Defendant Allen:*

Collins Einhorn Farrell PC
- Theresa M. Asoklis (P42709)
- Lindsey A. Peck (P74579)
4000 Town Center, 9th Floor
Southfield, Michigan 48075
Phone: (248) 355-4141
E-Mail: theresa.asoklis@ceflawyers.com
E-Mail: lindsey.peck@ceflawyers.com


*Counsel for Defendant Hamtramck:*

Schenk & Bruetsch PLC
- Marc A. Deldin (P71041)
211 West Fort, Suite 1410
Detroit, Michigan 48226
Phone: (313) 774-1000
E-Mail: marc.deldin@sbdetroit.com

# Table of Contents

Index of Authorities .................................................................................. ii

Issues Presented ...................................................................................... vi

Introduction .............................................................................................. 1

Background ............................................................................................... 2

Standard of Review .................................................................................. 4

Argument .................................................................................................. 5

   I. State Actor ........................................................................................ 5

   II. Qualified Immunity ...................................................................... 13

      A. Fourteenth Amendment ............................................................ 16

      B. First Amendment ...................................................................... 18

Conclusion .............................................................................................. 25

Certificate of Service .............................................................................. 1

# Index of Authorities[1]

*Cases*

*16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502 (6th Cir. 2013) ..................... 5

*Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268 (3d Cir. 1999) ................................13

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ..............................................................14

***Ashcroft v. Iqbal*, 556 U.S. 662 (2009)** .................................................**4, 5**

*Barany-Snyder v. Weiner*, 539 F.3d 327 (6th Cir. 2008)...............................................4

*Barber v. Overton,* 496 F.3d 449 (6th Cir. 2007) .....................................................15

*Barrett v. Harrington,* 130 F.3d 246 (6th Cir. 1997)............................................22, 23

*Bartell v. Lohiser*, 215 F.3d 550 (6th Cir. 2000)....................................................16

***Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)** ....................................**4, 6**

*Bell v. Johnson,* 308 F.3d 594 (6th Cir. 2002) .................................................. 4, 19

*Bloch v. Ribar,* 156 F.3d 673 (6th Cir. 1998)................................................21, 22, 23

*Carney v. Craven,* 40 Fed. Appx. 48 (6th Cir. 2002) ................................................15

***Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003)**....................................**6, 12, 13**

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .....................................16

*Cook v. Greenleaf Twp.*, No. 16-14060, 2018 WL 2219642 (E.D. Mich. May 15, 2018).....20

*Cooper v. Parrish*, 203 F.3d 937 (6th Cir. 2000).................................................... 6

*Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) ..................16

*Doherty v. Am. Motors Corp.*, 728 F.2d 334 (6th Cir. 1984) ........................................ 6

*Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599 (D. Md. 2016) ................................13

---

[1] The controlling or most appropriate authority for the relief sought is in bold typeface.

*Dyer v. Md. State Bd. of Educ.*, 685 Fed. Appx. 261 (4th Cir. 2017) ...............................13

*Ellis v. Ficano,* No. 94–1039, 1995 WL 764127 (6th Cir. Dec. 27, 1995) .....................15

*Emmons v. McLaughlin,* 874 F.2d 351 (6th Cir. 1989)................................................15

*Estate of Brouhard v. Vill. of Oxford,* 990 F. Supp. 839 (E.D. Mich. 1997) .......................15

*Freeman v. Trudell,* 497 F. Supp. 481 (E.D. Mich. 1980)..........................................15

*Frompovicz v. Twp. of Mannheim*, No. 06-2120, 2007 WL 2908292 (M.D. Pa. 2007).........13

*Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000) ................................................16

*Goldstein v. Galvin,* 719 F.3d 16 (1st Cir. 2013) .......................................................19

**Harlow v. Fitzgerald, 457 U.S. 800 (1982)**..............................................................**13**

**Hilton v. Mish, 224 F. Supp. 3d 595 (W.D. Mich. 2016)**...........................**7, 9, 10, 23**

**Hilton v. Mish, 720 Fed. Appx. 260 (6th Cir. 2018)** ...........................................**7, 24**

*Hocker v. Pikeville Police Dep't*, 738 F.3d 150 (6th Cir. 2013)......................................14

*Horen v. Bd of Educ. Of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833 (N.D. Ohio 2009).... 6, 13

**Hornbeak-Denton v. Myers, 361 Fed. Appx. 684 (6th Cir. 2010)**.....................**24, 25**

*Howell v. Father Maloney's Boys' Haven, Inc.,* 976 F.3d 750 (6th Cir. 2020)......................5

*Hutcherson v. Smith,* 908 F.2d 243 (7th Cir. 1990) ...................................................12

*Ivey v. Wilson,* 832 F.2d 950 (6th Cir. 1987) ...........................................................15

*Jackson v. Leutzow,* No. 05-188, 2006 WL 3751168 (W.D. Mich. Dec. 18, 2006) ...........17

*Johnson v. Ward,* No. 99-1596, 2000 WL 659354 (6th Cir. May 11, 2000) ....................15

*Lane v. Franks,* 573 U.S. 228 (2014) ....................................................................14

*Livermore v. Lubelan*, 476 F.3d 397 (6th Cir. 2007) ..................................................14

**Meadows v. Enyeart, 627 Fed. Appx. 496 (6th Cir. 2015)**...........................**11, 18, 25**

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005) ....................................................19

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ............................................................13

*Mitchell v. Vanderbilt Univ.*, 389 F.3d 177 (6th Cir. 2004) ...........................................25

*Mulligan v. Nichols,* 835 F.3d 983 (9th Cir. 2016) ....................................................19

*Naucke v. City of Park Hills,* 284 F.3d 923 (8th Cir. 2002) ......................................20, 21

*Neuens v. City of Columbus,* 303 F.3d 667 (6th Cir. 2002) ............................................. 6

*New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046 (6th Cir. 2011).......................... 3

*Nunez v. Los Angeles,* 147 F.3d 867 (9th Cir. 1998) ..................................................19

*Pearson v. Callahan*, 555 U.S. 223 (2009) ...........................................................14

*Pelligrino Food Prod. Co. v. City of Warran,* 136 F. Supp. 2d 391 (W.D. Pa. 2000) ............13

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ...........................................................14

*Polk Cnty. v. Dodson*, 454 U.S. 312 (1981)...........................................................12

*Reguli v. Guffee*, 371 Fed. Appx. 590 (6th Cir. 2010) ................................................12

*Riverview Health Inst. v. Med. Mut. of Ohio*, 601 F.3d 505 (6th Cir. 2010) ....................... 4

*Smith v. Craven,* 61 Fed. Appx. 159 (6th Cir. 2003) ..................................................15

*Stanton v. Sims*, 571 U.S. 3 (2013) ..................................................................14

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000)........................................20

***Taylor v. City of Falmouth*, 187 Fed. Appx. 596 (6th Cir. 2006) ............ 16, 17, 18, 20**

***Thaddeus-X v. Blatter,* 175 F.3d 378 (6th Cir. 1999) ......................................... 18, 21**

*Thaddeus-X v. Langley,* No. 96-1282, 1997 WL 205604 (6th Cir. April 24, 1997) ...........15

***Waters v. City of Morristown,* 242 F.3d 353 (6th Cir. 2001)............................... 10, 11**

*Wingo v. Tenn. Dep't of Corr.,* 499 Fed. Appx. 453 (6th Cir. 2012)................................15

*Wurzelbacher v. Jones-Kelley,* **675 F.3d 580 (6th Cir. 2012)** ........................ **21, 23, 24**

*Zander v. McGinnis,* No. 97-1484, 1998 WL 384625 (6th Cir. June 19, 1998) ............... 15

### Statutes

42 U.S.C. § 1983 ............................................................................ 5, 13, 15, 20

### Rules

Fed. R. Civ. P. 12 ................................................................................ 4, 25

## Issues Presented

I.     Was James Allen a state actor at the time of the events in question?

Charles Blackwell says "yes"

James Allen says "no"

The Court should say "no"

II.    If James Allen was a state actor at the time of the events in question, is he entitled to qualified immunity on the ground that there existed no law clearly establishing a First Amendment or Fourteenth Amendment right to be free from offensive remarks or threats (which were, in effect, nothing more than expressions of intent to pursue legal avenues of relief)?

Charles Blackwell says "no"

James Allen says "yes"

The Court should say "yes"

## Introduction

Charles Blackwell sent James Allen, an attorney in private practice who occasionally acts as City Attorney for the City of Hamtramck, a political-parody meme from an anonymous e-mail account tied to a fictitious Arabic woman's name. In response, Allen, who suspected that Blackwell might've been behind the anonymous e-mails, sent a series of e-mails in which he made insensitive comments about Blackwell's disability and expressed his intent to uncover Blackwell's identity through lawful means. Blackwell claims that Allen violated the Fourteenth Amendment by subjecting him to disparate treatment as compared to similarly-situated persons who aren't disabled. Blackwell claims that Allen violated the First Amendment, too, by retaliating against him for engaging in protected conduct.

Blackwell's claims fail right out of the gate because Allen wasn't a state actor. Allen didn't indicate that he was acting pursuant to any official duty, didn't suggest that he was speaking on behalf of the City of Hamtramck, and didn't sign his e-mails as City Attorney. His private conduct, outside the course of any official duty and unaided by any indicia of actual or apparent state authority, isn't state action.

In the event the Court finds that Allen was a state actor, Blackwell's claims don't fare any better. Allen is protected by qualified immunity because he didn't violate any constitutional rights, let alone any *clearly-established* constitutional rights. Harassing comments and idle "threats" (to use Blackwell's words) don't establish discriminatory effect for purposes of the Fourteenth Amendment or adverse action for purposes of the First Amendment.

## Background

Charles Blackwell is a self-described activist who claims to advocate for transparency and accountability in local government. James Allen is a private-sector attorney and a member of Allen Brothers, which has a contract to act as City Attorney for the City of Hamtramck.[2]

A few months ago, Blackwell sent the City several FOIA requests for information about the contracts between the City and Allen Brothers. The City Clerk granted some of his FOIA requests and denied others. Allen, then acting as City Attorney, granted in part and denied in part one of his FOIA requests.[3]

A few days later, Blackwell sent a political-parody meme to several members of Allen Brothers, including Allen, from an anonymous e-mail account under a fictitious Arabic[4] woman's name, "Susana Hamad." The meme, which Blackwell intended to be a criticism of Allen Brothers' actions as City Attorney, depicted the faces of Allen and other members of Allen Brothers attached to the bodies of women wearing skirts and holding briefcases.[5]

A few hours later and over the next few days, Allen sent "Hamad," who he thought could be Blackwell, a series of e-mails from his private Allen Brothers e-mail account. The e-mails, which mock Blackwell's disability, are disparaging. Blackwell *speculates* that Allen billed the City for the e-mails based on a few comments in which Allen intimated that the more

---

[2] ECF No. 1 (Complaint), Pg. ID 2, 4, ¶¶ 6, 12.
[3] ECF No. 1 (Complaint), Pg. ID 4, ¶¶ 15-17.
[4] Allen is part Arabic.
[5] ECF No. 1 (Complaint), Pg. ID 5, ¶¶ 19-21. The meme also degradingly enlarges his Jewish colleague's nose. (A subsequent meme yellows his African American colleague's teeth.)

Blackwell engaged with Allen Brothers, the more money Allen Brothers would make. (Of course, given his FOIA prowess, Blackwell *could've* readily ascertained whether Allen billed the City. And given the plausibility standard, Blackwell *should've* ascertained whether Allen billed the City.[6]) But unlike the previous correspondence in which Allen partially denied one of Blackwell's FOIA requests, Allen didn't sign any of the e-mails as City Attorney or otherwise suggest that he sent any of the e-mails on behalf of the City.[7]

Later, "Hamad" (Blackwell) sent the AGC an e-mail in which she (he) requested an investigation of Allen. "Hamad" (Blackwell) forwarded the e-mail to Allen. Allen then sent an e-mail to "Hamad" (Blackwell) in which he threatened to uncover her (his) identity via a subpoena to her (his) ISP and take her (his) deposition as part of the disciplinary process if the grievance resulted in a request for investigation. Again, Allen didn't sign the e-mail as City Attorney or otherwise suggest that he sent the e-mail on behalf of the City.[8]

Blackwell claims that the "threat" to uncover his identity through a subpoena to his ISP chilled him from continuing with the parody and anonymous speech. Although a subpoena to his ISP as part of the disciplinary process, if executed and honored, would reveal nothing more than his actual identity, he supposedly (implausibly) believed that the subpoena could give Allen access to private photos, videos, and communications that he claimed he stored in his

---

[6] The plausibility standard requires Blackwell to "have greater knowledge" of the facts because he "may not use the discovery process to obtain these facts after filing suit." *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011).

[7] ECF No. 1 (Complaint), Pg. ID 6-9, ¶¶ 26-33, 35; ECF No. 1-2 (E-Mails), Pg. ID 19, 21.

[8] ECF No. 1 (Complaint), Pg. ID 9-10, ¶¶ 37-39; ECF No. 1-4 (E-Mails), Pg. ID 25-26.

anonymous e-mail account (as opposed to his personal e-mail account).[9]

Blackwell claims that the "threat" to uncover his identity through a subpoena to his ISP and other disparaging communication also deterred him from attending City Council meetings at which Allen was present. But Allen wasn't present at any of the City Council meetings after the date of the complained-of conduct. And all of the City Council meetings were held virtually via Zoom,[10] so Blackwell could've attended anonymously under a fictitious name.

## Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. *Riverview Health Inst. v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). Whether dismissal is appropriate depends primarily on the allegations in the complaint. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). As a general rule, the Court must assume the veracity of the allegations in the complaint. *Riverview Health*, 601 F.3d at 512. But application of the general rule is limited to allegations comprised of well-pleaded facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Allegations comprised of labels and conclusions, formulaic recitals of elements, unadorned accusations, or naked assertions aren't entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Dismissal is proper if the complaint fails to establish entitlement to relief. *Riverview*, 601 F.3d at 512. To establish entitlement to relief, the complaint must cross the line of

---

[9] ECF No. 1 (Complaint), Pg. ID 10, ¶ 40.
[10] ECF No. 1 (Complaint), Pg. ID 10, ¶ 41. Meeting Minutes. Harry Kalogerakos, another member of Allen Brothers, attended the meetings as City Attorney.

possibility and enter the realm of plausibility. *Iqbal*, 556 U.S. at 678-679. If the well-pleaded factual allegations are merely consistent with liability, they fall short of "the line between possibility and plausibility of entitlement to relief." *Id.* at 678-679.

Blackwell "is not entitled to discovery, cabined or otherwise," if the complaint fails to meet the plausibility standard. *Id.* at 686. The plausibility standard prevents Blackwell from "launching a case into discovery" or "brandishing the threat of discovery" when "there is no reasonable likelihood" that a plausible claim can be constructed from the facts alleged in the complaint. *16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502 (6th Cir. 2013).

# Argument

Blackwell seeks to hold Allen liable under 42 U.S.C. § 1983. Specifically, Blackwell claims that Allen violated his Fourteenth Amendment right to equal protection of the law by subjecting him to disparate treatment on account of his disability. Blackwell claims that Allen also violated his First Amendment right to freedom of speech by retaliating against him for criticizing Allen Brothers and engaging in protected expression.

## I.    State Actor

Section 1983, the statute on which Blackwell relies, provides a remedy for the deprivation of a constitutional right at the hands of "any person acting under color of state law." *Howell v. Father Maloney's Boys' Haven, Inc.,* 976 F.3d 750, 752 (6th Cir. 2020). Only a claim against a "state actor" is eligible for relief under Section 1983. *Id.*

A private party qualifies as a state actor only where his actions may be "fairly

attributable to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). To establish that Allen was a state actor, Blackwell must satisfy one of three tests: (1) the public-function test, (2) the state-compulsion test, or (3) the substantial-nexus test. *Id.*[11] Under the public-function test, which is "interpreted narrowly," a private party is deemed a state actor if he "exercised powers traditionally reserved exclusively to the state." *Id.* Under the state-compulsion test, a private actor is deemed a state actor if the state coerced or significantly encouraged his decisions. *Id.* And under the substantial-nexus test, a private party is deemed a state actor if there's a "sufficiently close nexus" between his conduct and the state. *Id.*

Blackwell can't satisfy any of the state-actor tests. Allen didn't sign or send the e-mails as City Attorney. To be sure, none of the e-mails related to or furthered any City of Hamtramck business. Allen sent the e-mails as a private citizen.

Blackwell, of course, alleges otherwise. But his allegation is a legal conclusion rather than a well-pleaded fact. See *Neuens v. City of Columbus,* 303 F.3d 667, 670 (6th Cir. 2002). So his allegation isn't entitled to a presumption of truth. *Twombly*, 550 U.S. at 555. And his allegation, based on nothing more than Allen's status as City Attorney, is misinformed. "As

---

[11] A private party may also be deemed a state actor for purposes of Section 1983 if he conspired with a state actor to violate a constitutional right. *Cooper v. Parrish*, 203 F.3d 937, 952 n. 2 (6th Cir. 2000). However, Blackwell doesn't allege any conspiratorial conduct. And Blackwell can't allege any conspiratorial conduct between Allen and City of Hamtramck officials because an attorney can't conspire within the attorney-client relationship. *Horen v. Bd of Educ. Of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 842 (N.D. Ohio 2009), citing *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339-340 (6th Cir. 1984) (holding that a company cannot conspire with in-house or outside counsel).

the Sixth Circuit recognizes, *it is the nature of the action, not the status of the actor,* that determines whether an individual was acting under color of state law." *Hilton v. Mish,* 224 F. Supp. 3d 595, 602 (W.D. Mich. 2016), aff'd, 720 Fed. Appx. 260 (6th Cir. 2018).

Within the Sixth Circuit, *Hilton*—which notably involved a dismissal with prejudice at the pleading stage—is perhaps the most closely-analogous case. There, an activist and member of an advocacy and political think-tank group sued a city attorney on behalf of herself and her daughter, a developmentally-disabled minor at the time of the events in question, for retaliation under the First Amendment. The basic facts are that a tax dispute arose between the advocacy group and the city when the activist, on behalf of the advocacy group, applied to the city for certain exemptions. An attorney who supported the exemption request sent an e-mail to a reporter and copied the city attorney at her city e-mail address. The attorney recommended that the reporter attend and do press reviews of the advocacy group's upcoming events. He attached advertisements for the advocacy group's upcoming events, one of which was a lecture about sex trafficking featuring the activist and her daughter.

> *The backstory is that three years prior, the activist's daughter was allegedly abducted and repeatedly raped. After she was found in an abandoned building, she was interviewed by a detective, who concluded that her story didn't add up. The prosecutor declined to press charges. The activist sued the city and the police department.*

The city attorney responded, *from her official city e-mail account*, with criticisms of the activist and her exemption request, as well as choice words about her daughter:

> For an institute that proclaims the below political message, it

seems to me that they are entirely hypocritical in throwing an absolute hissy fit because they didn't get the government handout that they believe they are "entitled" to.

*   *   *

[The activist's] daughter, at the age of 15–16 or thereabouts, ran away from home (ran away from her "alternative" high school in downtown GR). She wandered the streets of downtown Grand Rapids, acting as a prostitute in exchange for heroin, cocaine, alcohol and so forth. Her father talked to her on her cell phone and asked where she was/asked her to come home. She refused to come home and refused to tell her father where she was. The police finally found her after many days of her escapades in trading sex for drugs.

And the result? [The] hypocrite dares to sue the City of Grand Rapids blaming the GRPD for the fact that her daughter ran away from home to become a crack and heroin whore…. Apparently, [the] hypocrite believes that the government is the cause of her family's woes. Therefore, the government owes them a pile of money! It must be the police department's fault, and she and her husband…believe they are owed money for this!

The young woman did not run away from home to become a crack and heroin whore because of anything done by the City of Grand Rapids or the GRPD. We did not raise her and did not influence her life choices in this regard. The hypocrisy of the [advocacy group] and its employees is simply amazing. Beware that you are dealing with hypocrites, sir.

The activist alleged that when the city attorney responded to the e-mail, she had access to the investigation files and knew the falsity of her statements. The activist further alleged that the city attorney responded to the e-mail in her official capacity. The district court disagreed, finding that the city attorney wasn't acting pursuant to her duties as city attorney

—8—

when she responded to the attorney's e-mail. The district court noted that the city attorney didn't indicate that she was acting pursuant to her official duties, didn't suggest that she was speaking on behalf of the city, and didn't sign her e-mail in her official capacity as the city attorney. The district court stated that the city attorney's use of her official city e-mail account, though bad judgment, didn't transform her private conduct into official city business or state action. The district court concluded that the activist's claim, at bottom, was that the city attorney was a state actor simply because she was the city attorney.

> Such is not the law. As the Sixth Circuit recognizes, it is the nature of the action, not the status of the actor, that determines whether an individual was acting under color of state law. Here, [the city attorney] did something that any private citizen could have done without the aid of official authority—express her views about the [advocacy group], the [activist], and [her] prior lawsuit. *Id.* at 602.[12]

This case aligns with *Hilton* to the extent that Allen didn't indicate that he was acting pursuant to any official duty, suggest that he was speaking on behalf of the City of Hamtramck, or sign his e-mails as City Attorney. This case also parts ways with *Hilton* to the extent that Allen didn't send any of his e-mails from an official City of Hamtramck e-mail account. He sent all of his e-mails from his private Allen Brothers e-mail account.[13] If the circumstances in

---

[12] The district court also found that even if the city attorney was a state actor, she was entitled to qualified immunity. The Sixth Circuit affirmed on the qualified-immunity ground and declined to reach the state-actor issue.

[13] Blackwell's allegation that Allen conducts City of Hamtramck business from his private Allen Brothers e-mail account is a non-sequitur. Clearly, he conducts private business from his Allen Brothers e-mail account, too.

*Hilton* didn't justify a finding that the city attorney was a state actor, then by parity of reasoning, the circumstances here don't justify a finding that Allen was a state actor.

Although *Hilton* isn't binding, *Hilton* comports with *Waters v. City of Morristown,* 242 F.3d 353, 359 (6th Cir. 2001)*,* a Sixth Circuit decision. There, a city alderman became enmeshed in the personal life of an employee of his private veterinarian practice. When she tried to distance herself from him, he used his position and influence as a city alderman to harass her and try to exert control over her life. Among other things, he had the police track her whereabouts and threatened to revoke the operating license of the taxi company transporting her. She claimed that, "but for his position of authority and influence," he wouldn't've been able to engage in the harassing conduct. *Waters,* 242 F.3d at 360. The Sixth Circuit found that his harassing conduct, though "reprehensible," wasn't within the scope of his responsibility as a city alderman and wasn't taken in furtherance of any city business. *Id.* Given the absence of evidence that his position as a city alderman "played a meaningful role in allowing him to harass and abuse" her, the Sixth Circuit concluded that he didn't act under color of state law. *Id.* "For the purposes of a state-action analysis, there can be no pretense of acting under color of state law if the challenged conduct is not related in some meaningful way either to the actor's governmental status or to the performance of his duties." *Id.* at 359.

Here too, Allen's comments were neither within the scope of his responsibility as City Attorney nor made in furtherance of any official City of Hamtramck business. Abundantly clear from Allen's e-mails is that he was expressing entirely private views about Blackwell that

—10—

had nothing to do with official City of Hamtramck business. As in *Waters,* he would've been able to express his private views about Blackwell from his private Allen Brothers e-mail account regardless of whether he held the position of City Attorney.

Likewise, Allen's "threat" to pursue private legal action was neither within the scope of his responsibility as City Attorney nor made in furtherance of any official City of Hamtramck business. The Sixth Circuit has observed that a government employee who has a private legal dispute with a citizen, "even if in some sense growing out of [his] government activities," is free to threaten and take private legal action. *Meadows v. Enyeart,* 627 Fed. Appx. 496, 507 (6th Cir. 2015). "Such action," according to the Sixth Circuit, "is not undertaken under the color of state law." *Id.* "Rather, the nature of the act performed is functionally equivalent to that of any private citizen." *Id.* at 501 (cleaned up).

In short, Allen wasn't a state actor. His private conduct, outside the course of any official duty and unaided by any indicia of actual or apparent state authority, wasn't state action. Blackwell pleads no facts from which the Court could reach a contrary conclusion.

As noted, Blackwell's allegation that Allen was acting as City Attorney when he sent the e-mails isn't entitled to a presumption of truth. But even if the Court indulges Blackwell's hyperbole and assumes that Allen was acting as City Attorney when he sent the e-mails, the Court will still be compelled to find that Allen wasn't a state actor.

Blackwell's inability to satisfy the public-function test or the state-compulsion test is a foregone conclusion. Providing legal services on behalf of a municipality isn't traditionally

within the exclusive prerogative of the state and isn't on par with the types of functions that've satisfied the public-function test—"holding elections, exercising eminent domain, and operating a company-owned town." *Chapman*, 319 F.3d at 833. And the state doesn't exercise any coercive power over Allen, who uses independent judgment when he acts on behalf of the City of Hamtramck. As the Supreme Court has observed, canons of professional responsibility require *every* attorney to exercise independent judgment on behalf of his client. *Polk Cnty. v. Dodson*, 454 U.S. 312, 321 (1981).

That leaves the substantial-nexus test. True, Allen acts as an "officer of the court" when he represents the City of Hamtramck. But an attorney "representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of Section 1983." *Id.* at 318. Even the conduct of an attorney appointed by the state, paid by the state, or subject to regulation by the state (such as a public defender or a legal guardian ad litem) doesn't necessarily have a sufficiently close nexus with the state as to qualify as a state actor. *Id.*; *Reguli v. Guffee*, 371 Fed. Appx. 590, 601 (6th Cir. 2010).

In determining whether there was a "sufficiently close nexus" between Allen's conduct and the state, the Court should be mindful that Allen isn't a full-time or even a part-time employee of the City of Hamtramck. He's a private-sector attorney retained by the City of Hamtramck. See *Hutcherson v. Smith,* 908 F.2d 243, 245 n. 2 (7th Cir. 1990).

True, an attorney in private practice isn't *always* a private actor. *Polk,* 454 U.S. at 321. But federal courts, including district courts within the Sixth Circuit, are in agreement that a

private attorney doesn't become a state actor simply because he represents a municipal entity. See, e.g., *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009); *Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 615-616 (D. Md. 2016), aff'd, 685 Fed. Appx. 261 (4th Cir. 2017); *Pelligrino Food Prod. Co. v. City of Warran,* 136 F. Supp. 2d 391, 409 (W.D. Pa. 2000). Only when a private attorney performs functions beyond the traditional attorney-client relationship, such as exercising policy-making authority or establishing local law, will he be considered a state actor. *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999); *Frompovicz v. Twp. of Mannheim*, No. 06-2120, 2007 WL 2908292, *8 (M.D. Pa. 2007).

When Allen sent the e-mails, he wasn't exercising any policy-making authority. He wasn't establishing any local law. And he wasn't performing any comparable function that was "fairly attributable to the state." *Chapman*, 319 F.3d at 833. So even if the Court assumes that he was acting as City Attorney, he still wasn't a state actor for purposes of Section 1983.

## II.    Qualified Immunity

To the extent the Court finds or assumes that Allen was a state actor, dismissal is still warranted. Allen is entitled to the protections of qualified immunity.

Section 1983 claims involving discretionary acts are analyzed against the backdrop of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not only immunity from liability, but also immunity from facing the burden of litigation and standing trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The utility of qualified immunity

is compromised, if not abrogated, when an action erroneously proceeds to trial. *Id.*

Allen may not be stripped of qualified immunity and subjected to personal liability unless he violated clearly-established constitutional rights. *Lane v. Franks,* 573 U.S. 228, 243 (2014). Generally, only case law from the Sixth Circuit or the Supreme Court can clearly establish the existence of constitutional rights. *Hocker v. Pikeville Police Dep't*, 738 F.3d 150, 153-154 (6th Cir. 2013). For constitutional rights to be clearly established, their contours must be "sufficiently definite" to the extent that a reasonable city attorney in like circumstances would've understood that the conduct in question violated such constitutional rights. *Plumhoff v. Rickard*, 572 U.S. 765, 778-779 (2014). Since the inquiry is context-specific, the Court must exercise caution to avoid defining clearly-established constitutional rights at too high a level of generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Blackwell bears the burden of demonstrating that Allen is not entitled to qualified immunity. *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). The burden is a heavy one—because qualified immunity gives Allen substantial breathing room to make reasonable but mistaken judgments of law and fact, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), Blackwell must establish that Allen knowingly violated the law or displayed plain incompetence. *Stanton v. Sims*, 571 U.S. 3, 6 (2013).

Allen is entitled to qualified immunity because he didn't violate any constitutional rights, let alone any *clearly-established* constitutional rights. The logical starting point is the longstanding and well-established principle in the Sixth Circuit that idle threats and harassing

or abusive comments aren't of constitutional magnitude. *Barber v. Overton,* 496 F.3d 449, 460 (6th Cir. 2007) (Cook, J., concurring) (observing that "courts have never recognized a constitutional right to be free from harassment or threats of violence"); *Wingo v. Tenn. Dep't of Corr.,* 499 Fed. Appx. 453, 455 (6th Cir. 2012), citing *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir. 1987) (observing that "verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a Section 1983 claim for relief"); *Smith v. Craven,* 61 Fed. Appx. 159, 162 (6th Cir. 2003) and *Carney v. Craven,* 40 Fed. Appx. 48, 50 (6th Cir. 2002) (observing that there's "no right to be free from verbal abuse,…and minor threats do not rise to the level of a constitutional violation").[14]

The principle extends to fear-inducing comments and threats. *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir. 1989); *Ellis v. Ficano,* No. 94–1039, 1995 WL 764127, *14 (6th Cir. Dec. 27, 1995). The principle extends to derogatory comments and threats, too. *Johnson v. Ward,* No. 99-1596, 2000 WL 659354, *2 (6th Cir. May 11, 2000); *Thaddeus-X v. Langley,* No. 96-1282, 1997 WL 205604, *1 (6th Cir. April 24, 1997). The principle applies to comments and threats that are more than just a one-off event. *Zander v. McGinnis,* No. 97-1484, 1998 WL 384625, *2 (6th Cir. June 19, 1998). And the principle applies across the board—idle threats and harassing or abusive comments aren't sufficient to establish *any* Section 1983 claim, including a Fourteenth Amendment claim or a First Amendment claim.

---

[14] Decisions from this Court are in accord. See, e.g., *Freeman v. Trudell,* 497 F. Supp. 481, 482 (E.D. Mich. 1980); *Estate of Brouhard v. Vill. of Oxford,* 990 F. Supp. 839 (E.D. Mich. 1997).

*Taylor v. City of Falmouth*, 187 Fed. Appx. 596, 600-601 (6th Cir. 2006).

### A.    Fourteenth Amendment

To maintain an equal-protection claim, Blackwell must establish discriminatory effect and discriminatory purpose. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). For discriminatory effect, Blackwell must establish that (1) Allen treated him disparately as compared to similarly-situated persons who aren't disabled, and (2) the disparate treatment burdened a fundamental right, targeted a suspect class,[15] or lacked a rational basis. *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). For discriminatory purpose, Blackwell must establish that Allen "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon [his disability]." *Farm Labor Org. v. Ohio Highway Patrol*, 308 F.3d 523, 534 (6th Cir. 2002).

To the extent that offensive comments regarding protected characteristics are "coupled with some additional harassment or constitutional violation," they "can provide some evidence of a discriminatory purpose." *Taylor*, 187 Fed. Appx. at 601. But offensive remarks about protected characteristics, standing alone, "do not rise to a level of constitutional magnitude"— even though such remarks are undoubtedly "unprofessional and reprehensible." *Owens v. Johnson*, No. 99-2094, 2000 WL 876766, *2 (6th Cir. June 23, 2000) (cleaned up), citing *Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985); see also *King v. City of Eastpointe*,

---

[15] Disability isn't a suspect or quasi-suspect class. *Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000), citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442-443 (1985) (observing that "disability-based classifications do not involve either a suspect or semi-suspect class").

86 Fed. Appx. 790, 814 (6th Cir. 2003) (observing that "discriminatory language…by itself is not an actionable violation of the Equal Protection Clause").

In *Taylor*, city officials issued a citation and towed an African American resident's vehicle under an ordinance that prohibited the storage of an inoperable vehicle within city limits. The prosecutor dismissed the citation. When the resident inquired about the return of his vehicle, city officials gave him the runaround. The resident attended multiple city council meetings over the next few years and continued to inquire about the return of his vehicle, to no avail. At one city council meeting in particular, a verbal confrontation between the resident and one of the city council members ensued. The council member launched a racial insult at the resident and invited the resident to "step outside" to discuss the matter further. The city police intervened. The council member left the meeting. When the resident tried to leave the meeting, the city police detained him for up to 45 minutes.

The resident filed a lawsuit in which he asserted an equal-protection claim, among others. The Sixth Circuit determined that race-based harassment, without more, failed to establish an equal-protection violation. The Sixth Circuit rejected the resident's argument that the threat of bodily harm and the detention satisfied the "additional harassment or constitutional violation" requirement. *Taylor,* 187 Fed. Appx. at 601.

District courts in the Sixth Circuit have relied on *Taylor* to conclude that disability-based harassment, without more, is likewise insufficient to establish an equal-protection claim. *Jackson v. Leutzow,* No. 05-188, 2006 WL 3751168, *5 (W.D. Mich. Dec. 18, 2006)

—17—

(rejecting equal-protection claim based on insensitive mockery regarding a handicap). This Court should reach the same conclusion. Allen's remarks about Blackwell's disability were disparaging. But they weren't accompanied by any "additional harassment or constitutional violation." *Taylor,* 187 Fed. Appx. at 601. Blackwell will undoubtedly hang his hat on the "threat" to uncover his identity by way of a subpoena to his ISP. But if a threat of *physical violence* and *detention* weren't enough to establish "additional harassment or constitutional violation," as was the case in *Taylor,* then certainly a "threat" to pursue private legal action isn't enough to establish "additional harassment or constitutional violation." Indeed, the Sixth Circuit has specifically rejected the notion that "threatening private legal action can be the basis of a Section 1983 claim." *Meadows,* 627 Fed. Appx. at 507. So, too, should this Court.

In sum, Allen didn't violate any clearly-established rights under the Fourteenth Amendment. As such, he's entitled to qualified immunity.

## B. First Amendment

To maintain a retaliation claim under the First Amendment, Blackwell must establish that (1) he engaged in protected conduct, (2) Allen took an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected conduct, and (3) the protected conduct motivated, at least in part, the adverse action. *Thaddeus-X v. Blatter,* 175 F.3d 378, 394, 398 (6th Cir. 1999). The second requirement, adverse action, is where Blackwell's retaliation claim falters.

Whether an action is adverse is analyzed under an objective standard. *Id.* The analysis

must be tailored to the circumstances of the alleged retaliation. See *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005). So the question is not whether Allen's comments *actually deterred* Blackwell from engaging in political parody or other protected conduct. *Bell v. Johnson,* 308 F.3d 594, 606 (6th Cir. 2002). The question, rather, is whether Allen's comments would've deterred a political activist of ordinary firmness from engaging in political parody or other protected conduct. *Mezibov*, 411 F.3d at 721.

Most retaliation claims involve the imposition of some punishment, sanction, or regulatory measure in retaliation for the exercise of free speech—some *action* that results in the loss of a government benefit, right, or privilege. That isn't the situation here. The essence of Blackwell's claim is that Allen chilled his speech by engaging in speech of his own. "It would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation." *Nunez v. Los Angeles,* 147 F.3d 867, 875 (9th Cir. 1998).

So unsurprisingly, federal courts "have not been receptive to retaliation claims arising out of government speech." *Goldstein v. Galvin,* 719 F.3d 16, 30 (1st Cir. 2013). Retaliation claims involving government speech "warrant a cautious approach" because, among other reasons, holding government officials liable for speech "ignores the competing First Amendment rights of the officials themselves." *Mulligan v. Nichols,* 835 F.3d 983, 989 (9th Cir. 2016). Federal courts have thus "set a high bar when analyzing whether speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim." *Id.* Federal courts have held that where a government official's "alleged retaliation is

in the nature of speech," there is no First Amendment violation "in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000).

The Sixth Circuit endorses a similar approach, which circles back to the principle that inaugurated the discussion: offensive remarks and idle threats, without more, are insufficient to support a Section 1983 claim. The Sixth Circuit's decision in *Taylor* (discussed above) illustrates the point. *Taylor,* recall, involved a confrontation between a resident and a city council member in which the latter made threats and racially-insensitive remarks. The Sixth Circuit drew a distinction between adverse actions and adverse words: "We have found [certain] *conduct*…sufficient evidence of adverse action to survive summary judgment. We have not, however, specifically stated that *verbal abuse* is sufficient…evidence of adverse action." *Id.* at 600. Relying on the principle that abusive remarks and idle threats aren't actionable under Section 1983, the Sixth Circuit held that the council member's "offensive remarks were a de minimis imposition" on the resident's First Amendment rights. *Id.*

Another instructive example is *Naucke v. City of Park Hills,* 284 F.3d 923 (8th Cir. 2002), which both this Court and the Sixth Circuit have cited with approval.[16] There, a resident criticized a city administrator and city council about a number of public concerns. In response, the city administrator "ridiculed and humiliated" her. *Id.* at 926. Among other

---

[16] See *Taylor,* 187 Fed. Appx. at 600; *Cook v. Greenleaf Twp.*, No. 16-14060, 2018 WL 2219642, *5 (E.D. Mich. May 15, 2018).

things, the city administrator "made derogatory comments to her in public places." *Id.* Even

so, the Eighth Circuit held that she didn't have a viable retaliation claim under the First

Amendment. The Eighth Circuit acknowledged that the city administrator's "harassing

comments" were "offensive, unprofessional and inappropriate." *Id.* at 928. But the Eighth

Circuit concluded that the "embarrassment, humiliation and emotional distress she alleged as

a result of these comments…would be insufficient to deter a person of ordinary firmness from

continuing to speak out." *Id.* To hold otherwise, the Eighth Circuit reasoned, would "trivialize

the First Amendment." *Id.*, citing *Bloch v. Ribar,* 156 F.3d 673, 679 (6th Cir. 1998).

The Sixth Circuit has emphasized that in the First Amendment retaliation context,

"certain threats or deprivations are so de minimis" and "inconsequential" that "they do not rise

to the level of being constitutional violations." *Thaddeus-X,* 175 F.3d at 398. Based on the

foregoing, harassment unaccompanied by any sanction, punishment, or like *action* is an

inconsequential threat to free speech. To be sure, the Sixth Circuit has made clear that "where,

as here, a challenged action *has no consequences whatsoever*, either immediate or long-term, it

ineluctably follows that such an action is 'inconsequential'" no matter how wrong the action

may seem. *Wurzelbacher v. Jones-Kelley,* 675 F.3d 580, 584 (6th Cir. 2012) (unlawful searches

of a resident's name in confidential databases, which took place after he publicly criticized a

presidential candidate, didn't amount to adverse action because the information retrieved

from the confidential databases wasn't publicly disclosed or otherwise used against him).

True, the Sixth Circuit has held that speech may, in limited circumstances, constitute

—21—

adverse action and rise to the level of a First Amendment violation. But those limited circumstances involved gratuitous *public* disclosures of private, confidential, and highly personal information or false *public* accusations of criminal wrongdoing.

In *Bloch v. Ribar,* 156 F.3d 673 (6th Cir. 1998), a rape victim criticized a sheriff and his department for their lack of progress in the rape investigation. In response, the sheriff held a press conference in which he publicly disclosed confidential, highly personal, and extremely humiliating details of the rape (which even the victim's husband didn't know about). The release of such details was illegal, unnecessary to the investigation, and unrelated to the criticism of the investigation. Afterward, the sheriff denied the victim's request for a copy of her statement to the sheriff regarding the details of the rape, which he hypocritically characterized as non-public information exempt from the public-records act.

The victim sued the sheriff for retaliation under the First Amendment. With respect to the adverse-action element, the Sixth Circuit acknowledged the sheriff's right to respond to the victim's criticism. But the Sixth Circuit held that the right didn't include the right to infringe the fundamental privacy right of the victim by gratuitously disseminating sensitive, personal, and confidential information to the public.

In *Barrett v. Harrington,* 130 F.3d 246 (6th Cir. 1997), a businessman investigated a judge so he could advocate against her re-election. When the judge learned that the businessman wanted the press to write an article about some dirt he dug up involving her misuse of office, she wrote to state and federal prosecuting attorneys on her official letterhead

and requested an investigation. She falsely accused the businessman of obstructing justice, as well as harassing her and her family. She also contacted others, including the police, and falsely accused the businessman of stalking her. Later, during interviews with the press, she publicly accused the businessman of stalking, harassing, and intimidating her.

The businessman sued the judge for retaliation under the First Amendment. The Sixth Circuit held that the businessman's criticism of the judge was protected conduct. The Sixth Circuit found sufficient evidence that the businessman's protected conduct was a motivating factor in the judge's conduct. *Without addressing whether the judge's conduct amounted to adverse action*, the Sixth Circuit held that the retaliation claim survived summary judgment.

*Barrett* and *Bloch* are readily distinguishable. Private e-mails containing disparaging but protected speech aren't on par with public statements disclosing intimate, embarrassing information in violation of a rape victim's fundamental right to privacy. Likewise, private e-mails containing disparaging but protected speech aren't on par with public statements defaming and falsely accusing another of criminal wrongdoing. See *Wurzelbacher,* 675 F.3d at 584 (recognizing the significance of *public* disclosure).

Recall *Hilton* (discussed in more detail above)*,* where a city attorney authored an e-mail in which she referred to a developmentally-disabled rape victim as a "crack and heroin whore," accused her political-activist mother of being an entitled hypocrite for seeking a government handout, and arguably defamed both the victim and her mother. As to the retaliation claim, the district court found *Bloch* and *Barrett* "materially distinguishable" because,

—23—

among other reasons, the city attorney didn't make the offensive, defamatory comments in *public. Id.* at 603-604. And the Sixth Circuit agreed, holding that the city attorney didn't violate any clearly-established law by making defamatory comments in a *private* e-mail exchange. *Hilton,* 720 Fed. Appx. at 265-266.

In short, this case doesn't fall in any of the limited circumstances in which speech, alone, can amount to adverse action. Disparaging language—unaccompanied by any punishment, sanction, or like *action*—is a de minimis, inconsequential threat to free speech. It bears repeating that "where, as here, a challenged action *has no consequences whatsoever*, either immediate or long-term, it ineluctably follows that such an action is 'inconsequential'" no matter how wrong the action may seem. *Wurzelbacher,* 675 F.3d at 584.

The "threats" to pursue private legal action suffer the same fate and fail to breathe life back into the retaliation claim. To begin, Blackwell is hard pressed to characterize Allen's words as "threats." Blackwell sent a grievance to the Attorney Grievance Commission from the anonymous e-mail account under the fictitious name. Allen expressed his intent to subpoena Blackwell's ISP and take Blackwell's deposition to uncover the identity of the grievant, which Allen would certainly be entitled to do in the event that the grievance resulted in a request for investigation and disciplinary proceeding.

In any event, the Sixth Circuit has held that "mere threats are generally not sufficient to satisfy the adverse action requirement." *Hornbeak-Denton v. Myers,* 361 Fed. Appx. 684, 689 (6th Cir. 2010) (cleaned up), citing *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir.

—24—

2004). *Hornbeak-Denton*, for example, involved a dispute between government officials and private citizens over ownership of land. The private citizens claimed that the government officials threatened to pursue legal action in retaliation for their criticisms of the government agency's permit process. The Sixth Circuit took note of the "general rule that bare threats are insufficient to constitute adverse actions." *Id.* From that premise, the Sixth Circuit affirmed dismissal of the retaliation claim under Rule 12(b)(6) on the basis that the "threats of legal process" were not "sufficiently 'adverse' to give rise to a retaliation claim." *Id.*

As in *Hornbeak-Denton,* Allen's "threat" to pursue legal action can't be regarded as adverse action. That's all the more true considering that Allen didn't "threaten to initiate anything other than *private* legal action." *Meadows,* 627 Fed. Appx. at 501. There's a significant difference between a threat to pursue private legal action and a threat to pursue enforcement action—the latter may amount to adverse action, but the former does not. *Id.* at 507.

To recap, Allen's use of disparaging language and "threat" to pursue legal action do not, alone or collectively, amount to adverse action. Because Allen didn't violate any clearly-established rights under the First Amendment, he's entitled to qualified immunity.

## Conclusion

For the foregoing reasons, Allen requests that the Court grant his motion to dismiss.

/s/ *Theresa M. Asoklis*
Theresa M. Asoklis (P42709)
Collins Einhorn Farrell PC
4000 Town Center, 9th Floor
Southfield, Michigan 48075
Dated: November 11, 2021          Counsel for James Allen

## Certificate of Service

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein via Electronic Filing Service on November 11, 2021.

/s/ *Theresa M. Asoklis*

Theresa M. Asoklis (P42709)
Collins Einhorn Farrell PC
4000 Town Center, 9th Floor
Southfield, Michigan 48075
Counsel for James Allen

## Certificate of Compliance

I, Theresa Askolis, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ *Theresa M. Asoklis*
Theresa M. Asoklis (P42709)
Collins Einhorn Farrell PC
4000 Town Center, 9th Floor
Southfield, Michigan 48075
Counsel for James Allen