UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES BLACKWELL,

                    Plaintiff,

vs.

CITY OF HAMTRAMCK
and JAMES PETER ALLEN, SR.
in his individual capacity,

                    Defendant.

Case No. 21-cv-12284

Hon. Mark A. Goldsmith

_____

ERNST CHARARA & LOVELL, PLC
Kevin Ernst (P44223)
Hannah R. Fielstra (P82101)
Counsel for Plaintiff
645 Griswold, Suite 4100
Detroit, Michigan 48226
(313) 965-5555
kevin@ecllawfirm.com
hannah@ecllawfirm.com

COLLINS EINHORN FARRELL, PC
Theresa M. Asoklis (P42709)
Lindsey A. Peck (P74579)
Counsel for Defendant Allen
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
theresa.asoklis@ceflawyers.com
lindsey.peck@ceflawyers.com

Tony D. Paris (P71525)
Counsel for Plaintiff
4605 Cass Avenue, Second Floor
Detroit, Michigan 48201
313-993-4505/Fax: 313-887-8470
tparis@sugarlaw.org

SCHENK & BRUETSCH, PLC
Marc A. Deldin (P71041)
211 W. Fort, Suite 1410
Detroit, MI 48226
(313) 774-1000
marc.deldin@sbdetroit.com

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT ALLEN'S MOTION TO DISMISS (ECF No. 14)

## STATEMENT OF THE ISSUES PRESENTED

Whether Defendant Allen's Motion to Dismiss Should Denied When:

    (1) Defendant Allen Relies on Evidence Outside of the Pleadings,
        Converting His Motion to a Rule 56 Motion for Summary Judgment;

    (2) Defendant Allen is a State Actor; and

    (3) Defendant Allen Is Not Entitled to Qualified Immunity, as He Violated
        Plaintiff's Clearly Established Rights.

Plaintiff's Answer: Yes.

This Court Should Answer: Yes.

## <u>MOST APPROPRIATE AUTHORITY</u>

<u>Cases</u>

*Anonymous Online Speakers v United States Dist Court (In re Anonymous Online Speakers)*, 661 F3d 1168 (CA 9, 2011)

*Baynes v. Cleland*, 799 F.3d 600, 612–13 (6th Cir. 2015)

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)

*Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398 (6th Cir. 1984)

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)

*Hill v Lappin,* 630 F.3d 468, 472 (6th Cir. 2010)

*Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898 (6th Cir. 2004)

*Taylor v City of Falmouth*, 187 F App'x 596 (CA 6, 2006)

*Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001)

*West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988)

## INTRODUCTION

Plaintiff filed the instant action against Defendant Allen and Defendant City of Hamtramck alleging violations of the 14th Amendment, Title II of the ADA, and First Amendment Retaliation after Defendant Allen, who is a city attorney for the City of Hamtramck, retaliated against and maliciously mocked Plaintiff in emails sent in his official capacity as city attorney for Hamtramck for being in a wheelchair and engaging in protected anonymous speech, filing FOIA requests, and attending council meetings. Defendant Allen moved to dismiss Plaintiff's claims, contending he is not a state actor and that if he is, he is entitled to qualified immunity. Allen also attached invoices all inexplicably from the same date, September 15, 2021, from the Allen Brothers, PLLC to dispute the allegations in Plaintiff's complaint even though discovery has not yet commenced, and no pretrial disclosures have been made, thereby converting his 12(b)(6) motion into a motion under Rule 56. For the following reasons, Defendant Allen's motion should be denied.

## STANDARD OF REVIEW

"[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (2007)).  A claim

has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). FRCP 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the [...] claim is and the grounds upon which it rests.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007). In this case, instead of taking Plaintiff's factual allegations as true, Defendant contested virtually all of his material facts. Assessment of the complaint must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104 (6th Cir. 2010).

## STATEMENT OF FACTS

The Complaint filed by Plaintiff sets forth the following allegations: Plaintiff

Charles Blackwell is 28-year-old resident and activist who advocates for transparency in government and holding Metro Detroit municipalities accountable by engaging with local municipalities on social media, attending city council meetings, and filing Freedom of Information Act ("FOIA") requests with various public bodies.  By way of background, in March of 2021, after the Inkster Parks and Recreation director was accused of embezzling funds for his own personal use, Mr. Blackwell commented on a post by the City of Inkster's police chief urging him to be transparent about the mayor's involvement in the embezzlement scandal, seeking to bring attention to the allegations and lack of transparency within the Inkster government.  The comment was deleted and Mr. Blackwell was blocked from the Inkster Police Department's Facebook page.  Mr. Blackwell also commented on the mayor of Inkster's municipal Facebook page, including critical comments about his investigation and involvement in the Parks and Recreation director's embezzlement allegations and exposing that the mayor owed delinquent property taxes to the City of Inkster while serving as mayor.   After Mr. Blackwell posted these critical comments, he was blocked from further commenting on the mayor's municipal Facebook page.  Mr. Blackwell successfully obtained a preliminary injunction in pro per in his pending First Amendment lawsuit against the City of Inkster, which ordered that Mr. Blackwell's ability to access municipal Facebook pages could not be blocked, (Case No. 21-cv-10628), after which the ACLU appeared on his behalf.

ECF No. 12, PageID112-114.

Defendant Allen's law firm, the Allen Brothers, PLLC, acts as the city attorney for both the City of Inkster and the City of Hamtramck and Defendant Allen routinely holds himself out as the Hamtramck City Attorney, while his partner, David Jones, holds himself out as the city attorney for the City of Inkster. ECF No. 12, PageID 114.

Mr. Blackwell has attended city council meetings for both Hamtramck and Inkster, including one recent city council meeting for the City of Inkster, in which Defendant Allen was present in his capacity as city attorney. City council meetings are open to the general public and Defendant often attended city council meetings for the City of Hamtramck as well. Id.

Throughout 2021 and prior to the filing of the instant lawsuit, Mr. Blackwell filed several FOIA requests seeking various sources of information involving the Allen Brothers, PLLC and its contract with the City of Hamtramck, as well as FOIA requests regarding members of the Hamtramck City Council. All of Mr. Blackwell's previous FOIA requests were granted or denied by the Hamtramck City Clerk until August 16, 2021, when Defendant Allen personally denied the FOIA request which sought some of his communications, adding "[i]n short, there are ample grounds to DENY your request on its face," while attaching five text messages. Defendant Allen signed the FOIA denial letter as "Hamtramck City Attorney." Id.

On August 18, 2021 at 4:19 PM, Mr. Blackwell sent a parody "meme" he created as criticism of Allen and Jones to the Hamtramck mayor, city manager and several Hamtramck City Council Members. He included Defendant Allen, and members of his law firm, Harry Kalogerakos, and David Jones in the meme, which was sent from an anonymous email account which used the name Susana Hamad. ECF No. 12, PageID 115.

The "meme" Mr. Blackwell sent depicted the faces of Defendant Allen and his partner, David Jones, juxtaposed on a woman's body, holding a briefcase outside of the Frank Murphy Hall of Justice (ECF No. 12, PageID 115) and was clearly labeled "POLITICAL PARODY AND SATIRE". Mr. Blackwell's parody did not contain any unprotected categories of speech such as true threats, fighting words, inciting violence or any other unprotected categories of speech or expression. It constituted protected speech. Id.

Relevant to Mr. Blackwell's lawsuit, Plaintiff was shot in the back several years ago while an innocent bystander in a random drive-by shooting while visiting a family member which rendered his lower extremities totally paralyzed and confined him to a wheelchair. Despite the meme being sent by an anonymous email account, Defendant Allen suspected the email was sent by Mr. Blackwell, likely given Mr. Blackwell's criticisms and their recent interactions at the Inkster City Council meeting and through Mr. Blackwell's FOIA requests. ECF No. 12, ID116.

On August 18, 2021, at 6:37 PM, three days after denying Mr. Blackwell's most recent FOIA request and in his capacity as Hamtramck City Attorney, Defendant Allen responded to the meme email implicitly criticizing his actions as a city attorney from his "JamesAllen@allenbrotherspllc.com" email address, which, notably, he uses for all business on behalf of the City of Hamtramck.  He gave several indications that he knew the email was from Charles Blackwell, targeting and mocking his disability explicitly:

    a.  Defendant Allen began the email "That's funny, Kev….I mean Chuck Whocan't ****";

    b.  Defendant Allen further mocked Mr. Blackwell's disabilities, stating, "Time for me to stand up and talk a walk.  I love to walk.  And run. And do things that others can't.  God doth have a great sense of humor and, in your case, a keen sense of justice."

    c.  He further stated, "I won't be thinking of you later tonight when I do that thing that you can't."  And added, "I want you to know that you are where you are because you so clearly and richly deserve to be there."

ECF No. 12, PageID 116-117; 12-2.

On August 19, 2021, Defendant Allen *again* responded to Mr. Blackwell, mocking his disability, stating "Haha Reek. Sit down and stay down where that bullet justly put you, punk. Back to your regularly scheduled sit down." He boasted,

"This washed up grey haired [sic] mother fucker will be closer to Wilt [Chamberlain] than you. Not because size matters but because God recognized evil and sentenced you to sit while people like me run free and spread our DNA into the universe like you can't."  Defendant Allen's email response to Mr. Blackwell also called him "limp Chuckie," "Chuckie," and "Chuck who can't ****." ECF No. 12, PageID 117.

Defendant Allen's email also mocks Plaintiff's disability by referring to Plaintiff as "Wheelboy," and by stating "thanks to you, I got money to buy us both a pair of gators, not that yours will ever see the pavement," in apparent reference to the fact that Mr. Blackwell's oversight activities, FOIAs and emails meant more billing from Defendant's law firm to Hamtramck.  In his capacity as a city attorney, also expressly boasted that the more Mr. Blackwell engaged with him and his partner, David Jones, the more money he would make, presumably because of their contracts with the City of Hamtramck and the City of Inkster, indicting he was billing the City of Hamtramck for engaging with the Plaintiff:

> The more you play, moreover, the better for me.  And you teaming up with your crusading friends? That's music to my ears. […] We love people like you.  My children thank you, in fact, for the college money. […] From the bottom of my satisfied self's contended heart, thank you for the many hours you keep my colleagues occupied.  The Allen-Jones Family educational scholarship fund thanks you as well. ECF No. 12-2.

Defendant Allen further added, "May your dreams be half as good as the reality you and your malcontented piece of horse dung cohorts provide for me and Potna Jones."

ECF No. 12, PageID 118.

In fact, the City of Hamtramck approved payment on the invoices specifically for the emails sent by Defendant Allen to Mr. Blackwell.  Id. Defendant Allen attached documents outside of the pleadings in his Motion (ECF No. 14-2), which apparently were invoices for legal work done by the Allen Brothers, PLLC for the City of Hamtramck, all dated September 15, 2021, purportedly to dispute Plaintiff's averments that Allend billed for the emails to Mr. Blackwell and was paid for them.[1]

On August 19th, 2021, Defendant Allen sent another email to Mr. Blackwell stating, "Saw you seated today and yesterday and will see you seated for as long as the Good Lord sentenced you. […] But you surely deserved that bullet God sent to put you where you are when you read this and where you will ALWAYS be, haha [...]" (Mr. Blackwell had recently attended an Inkster City Council meeting at which Defendant was also present.)  In that same email, Defendant Allen continued to make discriminatory comments about Plaintiff's disability stating, "Please please please send these emails to people and say I should be cancelled for dogging a pathetic little wheelboy like you out.  I dare you.  I beg you, cowardly punk."  ECF No. 12, PageID118-119; 12-2.

After receiving the barrage of emails sent mocking Plaintiff's disability, sent

---

[1] Discovery will establish that during an October 12, 2021, Hamtramck City Council meeting, Councilwoman Lasley stated that she reviewed the Allen Brothers' billings and that the city approved payment for the discriminatory emails to Mr. Blackwell.

by an attorney licensed in the State of Michigan acting as the City Attorney for Hamtramck, Mr. Blackwell emailed the Michigan Attorney Discipline Board Executive and Deputy Director from the Susana Hamad email account on August 24, 2021, asking that they investigate Defendant Allen's conduct. ECF No. 12-3. Mr. Blackwell then forwarded that email to Defendant Allen. ECF No. 12, ID 119.

The same day, on August 24th, 2021, Defendant Allen, in his capacity as Hamtramck City Attorney and using the power of his office, responded to the email and threatened to subpoena Mr. Blackwell's ISP to "verify what we already know," and threatened to depose Plaintiff, stating, "You'll be going under oath either way after your ISP answers my subpoena." ECF No. 12-4. As the city attorney for Hamtramck, Defendant Allen has the power to subpoena, which a private citizen does not have. ECF No. 12, PageID 120.

Mr. Blackwell was concerned by Defendant Allen's threat, as he has personal pictures, videos, emails, documents and communications with family, friends, and health care professionals contained in his email account and cloud storage on his computer, which Defendant could have obtained via the threatened subpoena. Defendant's threat chilled Plaintiff from further continuing with his parody and anonymous speech from this email account. Based on Defendant Allen's conduct and retaliation against Mr. Blackwell by mocking his disability, taunting him with comments about what Defendant is able to do and what Plaintiff cannot, asserting

that he deserved the bullet that paralyzed him, and threatening to subpoena Plaintiff's ISP and depose him, Mr. Blackwell was deterred from further engaging in activity protected by the Constitution, including but not limited to: attending city council meetings where Defendant Allen would be present (either in person or via Zoom), requesting documents via FOIA of which Defendant Allen or the City of Hamtramck is the subject, and engaging in anonymous political satire and free speech.  ECF No. 12, PageID 120.

I.   DEFENDANT ALLEN'S MOTION TO DISMISS ATTACHES EVIDENCE OUTSIDE OF THE PLEADINGS, CONVERTING THE MOTION TO A RULE 56 MOTION, WHICH IS PREMATURE AT THIS STAGE AND IT WOULD BE GROSSLY UNJUST FOR THE COURT TO CONSIDER EVIDENCE OUTSIDE THE PLEADINGS PRIOR TO PLAINTIFF'S ABILITY TO OBTAIN ADDITIONAL OR CONTRARY INFORMATION THROUGH DISCOVERY

Defendant Allen moved to dismiss the instant matter, relying at least in part, on invoices sent on **one** date, September 15, before parties even made initial disclosures and thus before Plaintiff has had any opportunity to conduct discovery. As such, Defendant's motion appears to be that of a grossly premature, and unsupported, Rule 56 Motion for Summary Judgment, rather than a Motion to Dismiss under Rule 12.

Plaintiff needs the ability to depose Defendant, depose any other witnesses such as city council members who have reviewed invoices sent by the Allen Brothers, PLLC, and to obtain relevant documents such as invoices sent on dates

outside September 15 and city payment documents.  This information, in the very least, is crucial to Plaintiff's ability to adequately oppose Defendant's contentions that he was not paid for the emails.  **Exhibit 1, Declaration**. Thus, Plaintiff should be granted an opportunity to conduct discovery before he has to respond to Defendant's motion.

Summary judgment motions, which Defendant's motion undoubtedly is, before any discovery are premature. *See Williams v Goodyear Tire & Rubber Co*, 2012 U.S. Dist. LEXIS 50972, at *13-15 (WD Tenn, Apr. 11, 2012) ("it is appropriate to use the Rule 56(d) "safety valve" to head off a premature swing of the "summary judgment axe"). *See also Martinez v First Class Interiors of Naples, LLC*, 2020 U.S. Dist. LEXIS 106961, at *23 (MD Tenn, June 18, 2020):

> because summary judgment is premature until parties have a full opportunity to conduct discovery**,** a Rule 56(d) motion requesting time for discovery should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence") (quoting Convertino v. United States DOJ, 684 F.3d 93, 99, 401 U.S. App. D.C. 297 (D.C. Cir. 2012)).

(emphasis added). Plaintiff not only did not have a full opportunity to conduct discovery, he had **zero** opportunity to conduct discovery in a case that largely is fact-determinative and one in which Defendant makes several factual arguments.

Instead of analyzing the facial content of the pleadings, as required on a 12(b)(6) motion, Defendant instead bases his arguments on the fact that Allen is not a state actor because he did not sign his emails "City Attorney for Hamtramck" and

11

invoices from September 15 only do not show that the City of Hamtramck was billed or paid for the horribly offensive emails sent by Allen. As described below, the issue of whether someone is a state actor depends also on one's intent – something that cannot be determined at this stage.  And, "[a]s a general matter" a Federal Court is "unable to consider a question of fact on a motion to dismiss" brought under Rule 12(b)(6). See, e.g., *Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part); *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014).

Because Defendant fails to adequately address Plaintiff's factual allegations, fails to adequately address the reasonable inferences drawn therefrom, and relies exclusively on his own version of the facts—including attaching documents outside the pleadings, Allen's Motion to Dismiss should be denied in its entirety.

II.  PLAINTIFF ADEQUATELY PLED THAT DEFENDANT ALLEN WAS A STATE ACTOR ACTING UNDER COLOR OF LAW WHEN HE DENIED PLAINTIFF'S FOIA REQUEST, THREATENED A SUBPOENA AND SENT THE DISCRIMINATORY EMAILS IN HIS CAPACITY AS A CITY ATTORNEY.

A public official acts under color of state law when she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941)). "Section 1983 is implicated when

"a state actor's conduct occurs in the course of performing an actual or apparent duty of his office" or when his "conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001) (citing West, 487 U.S. at 49-50, 108 S. Ct. at 2255). The pertinent inquiry, then, is "whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law." Id. Whether the official is on duty or off duty is not dispositive; it is the nature of the act performed which determines whether the officer has acted under color of law.'" *Mooneyhan v. Hawkins*, No. 96-6135, 1997 U.S. App. LEXIS 30223, 1997 WL 685423, at *3 (6th Cir. Oct. 29, 1997) (quoting Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975)). A government actor's private conduct, outside the course or scope of his duties becomes state action if it is aided "by any indicia of actual or ostensible state authority" *Waters*, 242 F.3d at 359.

Additionally, a private actor can act under color of law under certain circumstances. As the Sixth Circuit stated:

> When a defendant is a private entity, this circuit recognizes three tests for determining whether its conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test.

*Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898 (6th Cir. 2004). The instances where private parties have been found to be state actors fall into "two broad categories: the 'public function exception,' and the

'entanglement exception.'" *Osler ex rel. Osler v. Huron Valley Ambulance Inc.*, 671 F. Supp. 2d 938, 942 (E.D. Mich. 2009). The entanglement category includes cases describing "state compulsion" of a private person's conduct, and cases where a "nexus" is found between private conduct and the state, such that it "is entwined with governmental policies or when government is entwined in [its] management or control." *Chapman*, 319 F.3d at 834 (quoting Brentwood Acad., 531 U.S. at 295). The nexus test requires that a sufficiently close relationship exist between the state and the private act (through regulation or by contract) so that private action may be attributable to the state. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. Mich. June 6, 2003). Precedent provides no clear definition of or set formula for nexus, as the analysis "can be determined only in the framework of the peculiar facts or circumstances present." Burton v. Wilmington Parking Auth., 365 U.S. 715, 726, 81 S. Ct. 856, 6 L. Ed. 2d 45 (1961).

A. **Defendant Allen acted under color of law whether he is deemed a government official or a private actor.**

Defendant Allen personally denied Plaintiff's FOIA request – something no private citizen could do. He also threatened to subpoena Plaintiff's ISP – a power he holds by virtue of being city attorney for Hamtramck. He attended the city council meetings as the city attorney. He not only openly boasted that the more Plaintiff engages with him via email, the more money he and his law partner make, but Allen billed the City of Hamtramck for the emails he received and sent regarding

Blackwell.  While his other specific duties as a city attorney for Hamtramck are unknown and will be explored during discovery, in the very least, it can be inferred based on his conduct alleged in Plaintiff's complaint that it includes responding to FOIA requests, attending city council meetings as the city attorney, and responding to emails directed at Hamtramck city officials.  Plaintiff therefore pled facts sufficient to establish that Allen acted under color of law.

### B. Defendant's reliance on a Western District case and a case dismissed at the summary judgment stage are misplaced, as both are easily distinguishable.

Defendant claims he was not acting under color of law because he did not sign the email as city attorney, did not email it via Hamtramck government email address and did not indicate he was acting on behalf of Hamtramck or pursuant to his authority, citing *Hilton v Mish*, 224 F Supp 3d 595, 603 (WD Mich, 2016).  Though *Hilton* and the instant case both involve emails sent by city attorneys who did not sign their emails as city attorney, it is there where the similarities end. Allen's conduct goes far beyond that of the Defendant city attorney in *Hilton.*

In *Hilton,* the Plaintiffs' attorney emailed a local newspaper editor suggesting that it cover lectures put on by his corporate client, Acton. The Acton lawyer copied the city attorney, Mish. The email included an attachment of an upcoming Acton lecture to be given by Hilton regarding sex trafficking. Mish responded to the Acton lawyer criticizing Hilton for bringing a previous lawsuit against the city which

blamed the city for failing to protect her daughter from sex trafficking. Hilton then sued Mish claiming she was retaliating because of Acton's criticism of the city for its refusal to grant it tax exempt status. In dismissing the claim, the court noted that the Acton Lawyer's email to the editor mentioned nothing about the tax dispute, the email was not signed by Mish as city attorney and she did not indicate that she was responding on behalf of the city. Accordingly, the court concluded that she was merely a private citizen expressing her opinion to a lawyer for the Acton corporation, stating that Mish "did something any private citizen could have done without the aid of official authority—express her views about the Acton Institute, the Hiltons, and their prior lawsuit." *Id.* at 602.

Allen's conduct goes far beyond that of the city attorney in *Hilton.* He did not simply respond to an email sent by an attorney to a local newspaper editor. He responded to emails sent to city officials parodying him and his law partner. Considered in context, he sent incredibly discriminatory emails after personally denying Mr. Blackwell's FOIA request about his billing practices and threatening to subpoena Mr. Blackwell's ISP. Allen was responding to an email sent directly to him, related to his conduct as a city attorney. The meme Plaintiff emailed him was in response to recent interactions he had with  him, including the FOIA request he had personally denied, and Plaintiff labeled him "Hamtramck City Attorney" in the

16

meme.  The fact that Defendant Allen did not sign his email "City Attorney for Hamtramck" is not determinative.

Though he does not explicitly state he is acting on behalf of the City, Defendant's emails are replete with references to the money he makes and will make as city attorney because of Mr. Blackwell's engagement with the City.  Allen routinely boasts that the more Mr. Blackwell engages with him, the more money he makes.  He goes so far as to add, "thanks to you, I got money to buy us both a pair of gators, not that yours will ever see the pavement" and even refers to the "Allen-Jones Family educational scholarship fund" after telling Mr. Blackwell his children thank him for their college money and the "many hours [Plaintiff] keep[s] his colleagues occupied.  ECF No. 12, PageID 117-118.

In *Waters v City of Morristown*, 242 F3d 353 (CA 6, 2001)*,* also cited by Defendant, a case notably dismissed at the summary judgment stage, the Court found that the defendant, a city alderman and veterinary doctor, was not a state actor because he was acting in pursuit of a personal relationship with an employee of his veterinary clinic. The defendant physically abused the plaintiff for a lengthy period of time, including confining her, assaulting her, and threatening her. The court ruled that the alderman's conduct of asking the police to track the plaintiff and threaten a taxi company that transported her was "occasionally throwing his weight around" at most and was only peripherally related to the physical abuse.  *Id.* at 359.  In fact,

their entire relationship was not at all related to his role as a city alderman, unlike the facts here, where Allen's relationship to Mr. Blackwell is entirely within the context of Allen's role as a city attorney for Hamtramck.

Defendant Allen's emails were a clear and direct attempt to dissuade Mr. Blackwell from further FOIA requests, further open meetings act requests, attending further city council meetings, filing other legitimate lawsuits, and generally engaging in municipal oversight and encouraging transparency in local government with the threats he can carry out by virtue of his public position and humiliating ridicule of Plaintiff's disability – going so far as to say that he deserved the bullet that caused his paralysis.  Plaintiff adequately plead that Allen was acting with the authority of his office by pleading these facts, which satisfies his requirement at this stage of the case.

While Defendant Allen points out that he *could* have sent the emails to Mr. Blackwell had he not been a city attorney, the fact remains that he would not have sent these malicious emails without Mr. Blackwell's extensive history with him in his role as city attorney.  Furthermore, the subpoena threats and denial of the FOIA request demonstrates that Allen's conduct was aided "by any indicia of actual or ostensible state authority".

The Sixth Circuit concluded in *Waters* that "in the absence of any credible *evidence* that Dr. Shuck's official position played a meaningful role in allowing him

to harass and abuse Waters, her § 1983 claim against him must fail" (emphasis added). *Id.* at 360. Conversely, in this case there are ample averments and reasonable inferences that support the conclusion that Allen's official position played a meaningful role in his harassment of Mr. Blackwell. The Court in *Waters* also opined that "[t]he key determinant is whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id.* at 355. Without relevant discovery, there is no way to show Defendant Allen's intent at this stage. Defendant's 12(b)(6) motion should therefore be denied.

III.    **DEFENDANT ALLEN IS NOT ENTITLED TO QUALIFIED IMMUNITY AS A STATE ACTOR BECAUSE HE VIOLATED PLAINTIFF'S RIGHTS WHICH WERE CLEARLY ESTABLISHED AT THE TIME**

Plaintiff adequately pled avoidance of qualified immunity because the constitutional rights at stake were clearly established. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a legal question for the Court to resolve. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citing *Elder v. Holloway*, 501 U.S. 510, 516 (1994)).

When resolving a government official's assertion of qualified immunity, the court determines (1) whether the facts the plaintiff has alleged or shown

19

establishes the violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the incident. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 567 (6th Cir. 2013) (citing *Pearson v. Callahan* 555 U.S. 223, 232 (2009)). Courts may examine the two prongs in any order, depending on the facts and circumstances of each case. *Id.* at 567-68. Plaintiff established the violation of a constitutional right based on the facts alleged in his complaint.

In determining whether a law is clearly established, generally court should look to decisions of the Supreme Court and the Sixth Circuit. *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007); *see also Andrews v. Hickman Cty., Tenn.*, 700 F.3d 845, 853 (6th Cir. 2012) ("When determining whether a constitutional right is clearly established, we look first to the decisions of the Supreme Court, then to our own decisions and those of other courts within the circuit, and then to decisions of other Courts of Appeals."); *see also Wilson v. Layne*, 526 U.S. 603, 617 (1999). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The Sixth Circuit also stated that "reading the [qualified immunity] cases together, the Supreme Court has made clear that the *sine qua non* of the 'clearly established' inquiry is 'fair warning.'" *Baynes v. Cleland*, 799 F.3d 600, 612–13 (6th Cir. 2015). Thus, "[w]hile it is apparent that courts should not define clearly established law at a high level of generality, it is equally apparent that this does

not mean that 'a case directly on point' is required"; the question is, again, whether "precedent [has] placed the statutory or constitutional."

### A. Plaintiff plead facts sufficient to support a First Amendment Retaliation Claim

In order to allege a legally sufficient retaliation claim, a plaintiff must allege: (1) that he engaged in constitutionally protected conduct; (2) the defendant took an adverse action that would likely deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). The Sixth Circuit has observed that "since § 1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred." *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). This is simply a recognition of the broader rule that "*de minimis* injuries do not support a constitutional violation, even if intentionally inflicted." *United States v. Budd*, 496 F.3d 517, 530 (6th Cir. 2007). *Hilton v Mish*, 224 F Supp 3d 595, 603 (WD Mich, 2016).

Plaintiff's First Amendment right, including the right to criticize public officials such as Defendant was clear "[s]ince the day the ink dried on the Bill of Rights." *McCurdy v Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001).  As

21

with other forms of expression, the ability to speak anonymously […] allows individuals to express themselves freely without "fear of economic or official retaliation…[or] concern about social ostracism." *Anonymous Online Speakers v United States Dist Court (In re Anonymous Online Speakers)*, 661 F3d 1168, 1173 (CA 9, 2011) (citing *McIntyre v Ohio Elections Comm*, 514 US 334 (1995)). Defendant Allen retaliated by threatening to subpoena Plaintiff's ISP and used malicious language capable of deterring a person from engaging in protected First Amendment activity.  Defendant Allen was motivated to take this adverse action, Plaintiff alleged, in whole or part because of Plaintiff's constitutionally First Amendment rights, including Plaintiff's engagement in local politics, including his several FOIA requests directed to Defendant Allen and the Allen Brothers, PLLC's, billing practices with Hamtramck, Plaintiff's attendance at City Council meetings, Plaintiff's petitioning the government for redress and his disability.

The Sixth Circuit has not specifically held whether verbal abuse alone constitutes evidence of adverse action.  In *Taylor v City of Falmouth*, 187 F App'x 596 (CA 6, 2006), the Court did not find that Defendant's conduct rose to the level of adverse action at the summary judgment stage of the proceeding.  During a city council meeting, the plaintiff addressed the council regarding the status of his son's vehicle which had previously been towed by the city.  In response, a council member called the him a "big black bastard" and invited him to "step outside."  *Id.* at 598.

22

Allen's conduct extends far beyond that of the city council member's single racially offensive remark in *Taylor.* Allen's conduct was not limited to one racial insult. Instead, in response to Mr. Blackwell's protected First Amendment activity, he launched a barrage of horribly offensive emails regarding Plaintiff's disability and the manner in which he became disabled over a few days. As Plaintiff alleged, such verbal abuse deterred Plaintiff from engaging in anonymous protected speech, attending city council meetings, and engaging in municipal oversight activity.

Though a mere threat on its own may not satisfy the adverse action requirement, "[e]ven the threat of an adverse action can satisfy [the adverse action] element **if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct.**" *Hill v Lappin,* 630 F.3d 468, 472 (6th Cir. 2010) (emphasis added). Defendant's threats to subpoena Plaintiff's ISP and depose Plaintiff constitute a threat of adverse action for First Amendment purposes. As Plaintiff alleged in his complaint, he has personal pictures, videos, emails, documents and communications with family, friends, and health care professionals contained in his email account and cloud storage which Defendant could have obtained via the threatened subpoena and the threat chilled Plaintiff from further continuing with his parody and anonymous speech from his anonymous email.

### B. Plaintiff plead facts sufficient to establish a Fourteenth Amendment Claim

To prevail on a claim under 42 U.S.C. § 1983, "a plaintiff must set forth facts

that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018).  The Equal Protection Clause confers a constitutional right to be free from discrimination based on disability. To establish an equal protection violation, a plaintiff must show that a government actor discriminated against her by burdening a fundamental right, targeting a suspect class, or intentionally treating her differently than similarly situated persons without any rational basis for doing so.  *Loesel v City of Frankenmuth*, 692 F3d 452,461 (6th Cir. 2012) (emphasis added).

Plaintiff had a federal constitutional right secured by the 14th Amendment to be free from discrimination and retaliation as a result of his disability.  To establish a  violation  of  the Equal Protection Clause based  on disability discrimination, Plaintiff must show that there was no rational basis for the state action that treated hm differently because of his disability. *Bullington v Bedford Co*, 905 F3d 467, 477 (CA 6, 2018).

Mr. Blackwell alleged discrimination based on his disability and Allen's emails are replete with disturbingly offensive references to that disability. This is ipso facto evidences of an intent to discriminate. That is all that is required at the pleading stage.  Again, Defendant relies on two cases dismissed at the summary disposition stage (one out of the Western District of Michigan), for the proposition

that disability-based harassment is insufficient to establish an equal protection claim. In *Taylor v City of Falmouth,* the Plaintiff also alleged an Equal Protection violation arising from the same singular racial insult described above.  The Sixth Circuit agreed with the district court, which found that "there is no binding circuit authority that a single racial slur is sufficient to support a claim for an equal protection violation" and held that one isolated insensitive remark is not enough to support a violation of the Equal Protection Clause. *Id.* at 601.

Similarly, in *Jackson v Leutzow*, ___F Supp 2d___; 2006 U.S. Dist. LEXIS 103213 (WD Mich, Oct. 26, 2006)*,* the plaintiff alleged that the defendant was moving slowing and defendant told him, "this is not a Jerry's marathon," alleging that defendant made fun of him because of his disability.  Notably, the plaintiff did not allege that he was harmed by the defendant's remark.  Relying on *Taylor,* the court found that one insensitive remark was not enough.  *Id.* at 12. Again, Allen's overt mocking of Mr. Blackwell's disability rises far above that of the defendant in *Jackson.*  Paired with Allen's threat to subpoena Mr. Blackwell's ISP, and Plaintiff's allegations that he was deterred from engaging in further Constitutionally protected conduct, he adequately pled an Equal Protection violation.

WHEREFORE, Defendant's FRCP 12(b)(6) motion should be denied.

Respectfully submitted,

*/s/ Hannah R. Fielstra*
Hannah R. Fielstra (P82101)

25

**Ernst Charara & Lovell, PLC**
Counsel for Plaintiff


Dated: January 18, 2022


**LOCAL RULE CERTIFICATION**: I, Hanah Fielstra, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

Respectfully submitted,

/s/ Hannah R. Fielstra
Hannah R. Fielstra (P82101)
Attorney for Plaintiff
Ernst Charara & Lovell, PLC
645 Griswold Street, Suite 4100
Detroit, Michigan 48226
Phone: (313) 965-5555
Fax: (313) 965-5556
hannah@ecllawfirm.com

Dated: January 18, 2022