UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES BLACKWELL,

           Case No. 21-cv-12284

   Plaintiff,

 vs.          Hon. Mark A. Goldsmith

CITY OF HAMTRAMCK
and JAMES PETER ALLEN, SR.
in his individual capacity,

   Defendant.
_____

ERNST CHARARA & LOVELL, PLC  COLLINS EINHORN FARRELL, PC
Kevin Ernst (P44223)      Theresa M. Asoklis (P42709)
Hannah R. Fielstra (P82101)    Lindsey A. Peck (P74579)
Counsel for Plaintiff      Counsel for Defendant Allen
645 Griswold, Suite 4100     4000 Town Center, 9th Floor
Detroit, Michigan 48226     Southfield, MI 48075
(313) 965-5555       (248) 355-4141
kevin@ecllawfirm.com     theresa.asoklis@ceflawyers.com
hannah@ecllawfirm.com     lindsey.peck@ceflawyers.com

Tony D. Paris (P71525)     SCHENK & BRUETSCH, PLC
Counsel for Plaintiff      Marc A. Deldin (P71041)
4605 Cass Avenue, Second Floor  211 W. Fort, Suite 1410
Detroit, Michigan 48201     Detroit, MI 48226
313-993-4505/Fax: 313-887-8470  (313) 774-1000
tparis@sugarlaw.org      marc.deldin@sbdetroit.com
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT HAMTRAMCK'S MOTION
TO DISMSS (ECF NO. 15)**

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

Whether Defendant Hamtramck's Motion to Dismiss Should Denied When:

    (1) Plaintiff Alleged He Was Subjected to Discrimination by Defendant because of His Disability and Pled a Viable Claim Under Title II of the ADA; and

    (2) Plaintiff Also Pled That Defendant Allen Had Decision-Making Authority as a City Attorney for the City of Hamtramck and Therefore the City of Hamtramck is Liable for Plaintiff's 1983 Claims Under *Monell*.

Plaintiff's Answer: Yes.

This Court Should Answer: Yes.

# MOST APPROPRIATE AUTHORITY

Cases

*Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)

*City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)

*Holloway v. Brush,* 200 F.3d 767, 773 (6th Cir. 2000)

*Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir. 2003)

*Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)

## INTRODUCTION

Plaintiff filed the instant action against Defendant Allen and Defendant City of Hamtramck alleging violations of the 14th Amendment, Title II of the ADA, and First Amendment Retaliation after Defendant Allen, who is a city attorney for the City of Hamtramck, retaliated against and maliciously mocked Plaintiff in emails sent as city attorney for Hamtramck because of his disability, which has left him confined to a wheelchair, and because he was engaging in protected anonymous speech, filing FOIA requests, and attending council meetings. Defendant City of Hamtramck moved to dismiss Plaintiff's claims, contending that "the State has no place in protecting him from the offense of others who are also exercising their right to offend."  Plaintiff's claim is not that the state should protect him from these horrific emails mocking him because he is disabled; rather, it is that he should not be discriminated or retaliated against by the state under these circumstances. Not only does Defendant completely mischaracterize Plaintiff's claims throughout its motion, in a nutshell, Defendant Hamtramck argues that Plaintiff "started it," so he is free to be discriminated against by the government.  For the following reasons, Defendant Hamtramck's motion should be denied.

## STANDARD OF REVIEW

"[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a

cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (2007)).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678.  In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  FRCP 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the […] claim is and the grounds upon which it rests.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007).  In this case, instead of taking Plaintiff's factual allegations as true, Defendant contested virtually all of his material facts.  Assessment of the complaint must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d

1102, 1104 (6th Cir. 2010).

## STATEMENT OF FACTS

The Complaint filed by Plaintiff sets forth the following allegations: Plaintiff Charles Blackwell is 28-year-old resident and activist who advocates for transparency in government and holding Metro Detroit municipalities accountable by engaging with local municipalities on social media, attending city council meetings, and filing Freedom of Information Act ("FOIA") requests with various public bodies.  By way of background, in March of 2021, after the Inkster Parks and Recreation director was accused of embezzling funds for his own personal use, Mr. Blackwell commented on a post by the City of Inkster's police chief urging him to be transparent about the mayor's involvement in the embezzlement scandal, seeking to bring attention to the allegations and lack of transparency within the Inkster government.  The comment was deleted and Mr. Blackwell was blocked from the Inkster Police Department's Facebook page.  Mr. Blackwell also commented on the mayor of Inkster's municipal Facebook page, including critical comments about his investigation and involvement in the Parks and Recreation director's embezzlement allegations and exposing that mayor owed delinquent property taxes to the City of Inkster while serving as mayor. After Mr. Blackwell posted these critical comments, he was blocked from further commenting on the mayor's municipal Facebook page.  Mr. Blackwell successfully obtained a preliminary injunction in pro

per in his pending First Amendment lawsuit against the City of Inkster, which ordered that Mr. Blackwell's ability to access municipal Facebook pages could not be blocked, (Case No. 21-cv-10628), after which the ACLU appeared on his behalf. ECF No. 12, PageID112-114.

Defendant Allen's law firm, the Allen Brothers, PLLC, acts as the city attorney for both the City of Inkster and the City of Hamtramck and Defendant Allen routinely holds himself out as the Hamtramck City Attorney, while his partner, David Jones, holds himself out as the city attorney for the City of Inkster. ECF No. 12, PageID 114.

Mr. Blackwell has attended city council meetings for both Hamtramck and Inkster, including one recent city council meeting for the City of Inkster, in which Defendant Allen was present in his capacity as city attorney. City council meetings are open to the general public and Defendant often attended city council meetings for the City of Hamtramck as well. Id.

Throughout 2021 and prior to the filing of the instant lawsuit, Mr. Blackwell filed several FOIA requests seeking various sources of information involving the Allen Brothers, PLLC and its contract with the City of Hamtramck, as well as FOIA requests regarding members of the Hamtramck City Council. All of Mr. Blackwell's previous FOIA requests were granted or denied by the Hamtramck City Clerk until August 16, 2021, when Defendant Allen personally denied the FOIA request which

4

sought some of his communications, adding "[i]n short, there are ample grounds to DENY your request on its face," while attaching five text messages.  Defendant Allen signed the FOIA denial letter as "Hamtramck City Attorney."  Id.

On August 18, 2021 at 4:19 PM, Mr. Blackwell sent a parody "meme" he created as criticism of Allen and Jones to the Hamtramck mayor, city manager and several Hamtramck City Council Members. He included Defendant Allen, and members of his law firm, Harry Kalogerakos, and David Jones in the meme, which was sent from an anonymous email account which used the name Susana Hamad. ECF No. 12, PageID 115.

The "meme" Mr. Blackwell sent depicted the faces of Defendant Allen and his partner, David Jones, juxtaposed on a woman's body, holding a briefcase outside of the Frank Murphy Hall of Justice (ECF No. 12, PageID 115) and was clearly labeled "POLITICAL PARODY AND SATIRE".  Mr. Blackwell's parody did not contain any unprotected categories of speech such as true threats, fighting words, inciting violence or any other unprotected categories of speech or expression.  It constituted protected speech. Id.

Relevant to Mr. Blackwell's lawsuit, Plaintiff was shot in the back several years ago while an innocent bystander in a random drive-by shooting while visiting a family member which rendered his lower extremities totally paralyzed and confined him to a wheelchair.  Despite the meme being sent by an anonymous email

account, Defendant Allen suspected the email was sent by Mr. Blackwell, likely given Mr. Blackwell's criticisms and their recent interactions at the Inkster City Council meeting and through Mr. Blackwell's FOIA requests. ECF No. 12, ID116.

On August 18, 2021, at 6:37 PM, three days after denying Mr. Blackwell's most recent FOIA request and in his capacity as Hamtramck City Attorney, Defendant Allen responded to the meme email implicitly criticizing his actions as a city attorney from his "JamesAllen@allenbrotherspllc.com" email address, which, notably, he uses for all business on behalf of the City of Hamtramck. Defendants apparently claim Mr. Blackwell deserved to be discriminated against by the government because he enlarged the nose of a Jewish attorney and colored the teeth of an African-American attorney yellow, the meme speaks for itself and such a claim is a figment of the imagination. Further, a private citizen's protected speech in no way gives the state permission to launch a hateful campaign threatening Mr. Blackwell because of his disability and exercise of his Constitutionally protected rights.

Allen gave several indications that he knew the email was from Charles Blackwell, targeting and mocking his disability explicitly:

    a. Defendant Allen began the email "That's funny, Kev….I mean Chuck Whocan't ****";

     b.  Defendant Allen further mocked Mr. Blackwell's disabilities, stating, "Time for me to stand up and talk a walk.  I love to walk.  And run. And do things that others can't.  God doth have a great sense of humor and, in your case, a keen sense of justice."

     c.  He further stated, "I won't be thinking of you later tonight when I do that thing that you can't."  And added, "I want you to know that you are where you are because you so clearly and richly deserve to be there."

ECF No. 12, PageID 116-117; 12-2.

On August 19, 2021, Defendant Allen *again* responded to Mr. Blackwell, mocking his disability, stating "Haha Reek. Sit down and stay down where that bullet justly put you, punk. Back to your regularly scheduled sit down." He boasted, "This washed up grey haired [sic] mother fucker will be closer to Wilt [Chamberlain] than you. Not because size matters but because God recognized evil and sentenced you to sit while people like me run free and spread our DNA into the universe like you can't."  Defendant Allen's email response to Mr. Blackwell also called him "limp Chuckie," "Chuckie," and "Chuck who can't ****." ECF No. 12, PageID 117.

Defendant Allen's email also mocks Plaintiff's disability by referring to Plaintiff as "Wheelboy," and by stating "thanks to you, I got money to buy us both a pair of gators, not that yours will ever see the pavement," in apparent reference to the fact that Mr. Blackwell's oversight activities, FOIAs and emails meant more

billing from Defendant's law firm to Hamtramck.  In his capacity as a city attorney, also expressly boasted that the more Mr. Blackwell engaged with him and his partner, David Jones, the more money he would make, presumably because of their contracts with the City of Hamtramck and the City of Inkster, indicting he was billing the City of Hamtramck for engaging with the Plaintiff:

> The more you play, moreover, the better for me.  And you teaming up with your crusading friends? That's music to my ears. […] We love people like you.  My children thank you, in fact, for the college money. […] From the bottom of my satisfied self's contended heart, thank you for the many hours you keep my colleagues occupied.  The Allen-Jones Family educational scholarship fund thanks you as well. ECF No. 12-2.

Defendant Allen further added, "May your dreams be half as good as the reality you and your malcontented piece of horse dung cohorts provide for me and Potna Jones." ECF No. 12, PageID 118.

In fact, the City of Hamtramck approved payment on the invoices specifically for the emails sent by Defendant Allen to Mr. Blackwell.  Id. Defendant Allen attached documents outside of the pleadings in his Motion (ECF No. 14-2), which apparently were invoices for legal work done by the Allen Brothers, PLLC for the City of Hamtramck, all dated September 15, 2021, purportedly to dispute Plaintiff's averments that Allend billed for the emails to Mr. Blackwell and was paid for them.[1]

---

[1] Discovery will establish that during an October 12, 2021, Hamtramck City Council meeting, Councilwoman Lasley stated that she reviewed the Allen Brothers' billings and that the city approved payment for the discriminatory emails to Mr. Blackwell.

On August 19th, 2021, Defendant Allen sent another email to Mr. Blackwell stating, "Saw you seated today and yesterday and will see you seated for as long as the Good Lord sentenced you. […] But you surely deserved that bullet God sent to put you where you are when you read this and where you will ALWAYS be, haha [...]" (Mr. Blackwell had recently attended an Inkster City Council meeting at which Defendant was also present.)  In that same email, Defendant Allen continued to make discriminatory comments about Plaintiff's disability stating, "Please please please send these emails to people and say I should be cancelled for dogging a pathetic little wheelboy like you out.  I dare you.  I beg you, cowardly punk."  ECF No. 12, PageID118-119; 12-2.

After receiving the barrage of emails sent mocking Plaintiff's disability, sent by an attorney licensed in the State of Michigan acting as the City Attorney for Hamtramck, Mr. Blackwell emailed the Michigan Attorney Discipline Board Executive and Deputy Director from the Susana Hamad email account on August 24, 2021, asking that they investigate Defendant Allen's conduct. ECF No. 12-3. Mr. Blackwell then forwarded that email to Defendant Allen.  ECF No. 12, ID 119.

The same day, on August 24th, 2021, Defendant Allen, in his capacity as Hamtramck City Attorney and using the power of his office, responded to the email and threatened to subpoena Mr. Blackwell's ISP to "verify what we already know," and threatened to depose Plaintiff, stating, "You'll be going under oath either way

after your ISP answers my subpoena." ECF No. 12-4. As the city attorney for Hamtramck, Defendant Allen has the power to subpoena, which a private citizen does not have. ECF No. 12, PageID 120.

Mr. Blackwell was concerned by Defendant Allen's threat, as he has personal pictures, videos, emails, documents and communications with family, friends, and health care professionals contained in his email account and cloud storage on his computer, which Defendant could have obtained via the threatened subpoena. Defendant's threat chilled Plaintiff from further continuing with his parody and anonymous speech from this email account. Based on Defendant Allen's conduct and retaliation against Mr. Blackwell by mocking his disability, taunting him with comments about what Defendant is able to do and what Plaintiff cannot, asserting that he deserved the bullet that paralyzed him, and threatening to subpoena Plaintiff's ISP and depose him, Mr. Blackwell was deterred from further engaging in activity protected by the Constitution, including but not limited to: attending city council meetings where Defendant Allen would be present (either in person or via Zoom), requesting documents via FOIA of which Defendant Allen or the City of Hamtramck is the subject, and engaging in anonymous political satire and free speech. ECF No. 12, PageID 120.

I.   PLAINTIFF ALLEGED HE WAS SUBJECTED TO DISCRIMINATION BY DEFENDANT BECAUSE OF HIS DISABILITY AND PLED A VIABLE CLAIM UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT

The Americans with Disabilities Act and the Rehabilitation Act combat discrimination against disabled individuals. Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The Act allows disabled individuals to sue certain entities that exclude them from participation in, deny them benefits of, or discriminate against them in a program because of their disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015); *cf. G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623, 635 (6th Cir. 2013).  A Title II plaintiff may bring a claim for intentional discrimination or for failure to provide a reasonable accommodation. *Roell v. Hamilton County*, 870 F.3d 471, 488 (6th Cir. 2017).

To state a claim of disability discrimination under Title II of the ADA, a plaintiff must allege that "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." *Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir. 2003).

 Plaintiff pleaded that he became disabled after he was shot in the back several years ago in a random drive-by shooting.  Mr. Blackwell was an innocent bystander visiting a family member at the time.  The shooting left his lower extremities

11

paralyzed and he is now confined to a wheelchair.  Defendant Hamtramck's statement that Plaintiff never alleged he was being discriminated against because of his disability is categorically false.  Plaintiff clearly alleged that he is being "denied the benefits of other non-disabled citizens and being subjected to discrimination because of his disability" and further, that that discrimination was intentional, willful, and in reckless disregard of Plaintiff's rights.  ECF No. 12, ¶¶55-56.

Plaintiff also alleges that Defendant was aware that Mr. Blackwell sent the emails from the anonymous account and was aware of his disability – especially given his intricate knowledge of how he became disabled.  Again, Defendant Hamtramck blatantly disregards the multiple paragraphs wherein Plaintiff alleges that Allen was aware Mr. Blackwell sent the emails from the anonymous account and was familiar with his disability. Id. at ¶¶26-29.  It is absurd to even suggest that Allen was responding to the anonymous email account without knowing it was Mr. Blackwell.  Allen's emails are replete with disturbingly offensive references to Mr. Blackwell's disability and his nicknames.

Defendant Hamtramck cites an unpublished district court case out of the Middle District of Tennessee, notably dismissed at the summary judgment stage, for the apparent proposition that Allen's offensive comments about Mr. Blackwell's disability are an improper subject for an ADA complaint. *Doe v Fults*, ___F Supp 2d___; 2006 U.S. Dist. LEXIS 3012 (MD Tenn, Jan. 20, 2006)*,* which Defendant

claims is cited only for illustrative purposes, yet proceeds to expend three pages analyzing, is almost laughably inapplicable to the case at bar. In *Fults,* an illicit relationship occurred between Plaintiff Doe and Defendant Fults, a teacher in the Rutherford County school system. The plaintiff brought a number of claims against Fults, the school district board of education and the principal, including a 42 U.S.C. § 1983 claim and an ADA claim. As to the ADA claim, the plaintiff alleged that Fults targeted or discriminated against him because of his Attention Deficit-Hyperactivity Disorder ("ADHD") and the principal should have known that Fults' dangerous propensities could lead reasonable minds to determine liability on the part of the school board for discrimination based on the plaintiff's disability. The opinion refers to an alleged "Forrest Gump" comment made in plaintiff's complaint, but does not offer more detail beyond the fact that *defendants* asserted "that such a onetime, insulting comment cannot give rise to ADA liability." Id. at 23.

Notwithstanding the fact that Allen is the city attorney with decision-making authority with knowledge of Plaintiff's disability and is the decisionmaker who discriminated against Mr. Blackwell because of his disability, his conduct and commentary rises far above a one-time reference to a movie. Allen sent incredibly discriminatory emails rife with offensive remarks related to plaintiff's disability after personally denying Mr. Blackwell's FOIA request about his billing practices and threatening to subpoena Mr. Blackwell's ISP. As Plaintiff pled in his complaint, he

13

has been deterred/constructively barred from further engaging in activity protected by the Constitution and Title II, including but not limited to: attending city council meetings where Defendant Allen would be present, requesting documents via FOIA of which Defendant Allen or the City of Hamtramck is the subject, and engaging in anonymous political satire and free speech as a result of the discrimination he was subjected to by Defendant Allen, a decision-maker for the City.

Discriminatory remarks can constitute direct evidence of discrimination. *Bartlett v. Gates*, 421 F. App'x 485, 489 (6th Cir. 2010); *DiCarlo v. Potter*, 358 F.3d 408, 417 (6th Cir. 2004); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004).

It is disingenuous to suggest that the comments Allen made in his emails to Mr. Blackwell were isolated and ambiguous, as in *Parkhusrt v. Am. Healthways Servs.*, LLC, 700 F. App'x 445, 450 (6th Cir. 2017). In *Parkhurst,* Plaintiff brought an ADA claim against her employer based on her supervisor's alleged comments regarding her age, disability and FMLA leave. The Court ultimately found that and the four-month gap between the employee's surgery and termination did not provide enough to infer that what actually motivated the employer's decision to fire the employee was her age, alleged disability, or FMLA leave, rather than her documented performance deficiencies. The plaintiff in *Parkhurst* alleged that her supervisor made approximately 6 comments to her regarding her performance over

the course of about two-and-a-half months.  The comments included things such as "At your age its very – it's hard to keep up," "You have a lot of health issues," "Why don't you retire," and "Maybe you need to find a job closer to home."  Id. at 447. The Court ultimately found that these comments were isolated and ambiguous. Id. at 450.

The emails Allen sent Mr. Blackwell occurred over the course of six days and are rife with comments related to the fact that Allen believed Mr. Blackwell deserved the bullet which caused his paralysis – which he told him on several occasions, repeatedly making fun of Plaintiff's inability to walk and the fact that he is confined to a wheelchair, and repeatedly calling him "wheelboy."  These overt discriminatory remarks ipso facto evidence an intent to discriminate and go well beyond comments that are isolated and ambiguous, as in *Parkurst*.  There is not much ambiguity in repeated insults like, "Saw you seated today and yesterday and will see you seated for as long as the Good Lord sentenced you. […] But you surely deserved that bullet God sent to put you where you are when you read this and where you will ALWAYS be, haha [...]" Plaintiff therefore pled a viable claim for discrimination under Title II of the ADA.

II.   PLAINTIFF ALSO PLED THAT ALLEN HAD DECISION-MAKING AUTHORITY AS A CITY ATTORNEY FOR THE CITY OF HAMTRAMCK AND THEREFORE THE CITY OF HAMTRAMCK IS LIABLE FOR PLAINTIFF'S §1983 CLAIMS UNDER *MONELL*

*Monell* imposes municipal liability under §1983 when (1) a constitutional violation has occurred and (2) the municipality "is responsible for that violation," *Doe v. Claiborne Cnty.*, 103 F.3d 495, 505 (6th Cir. 1996), based on the "execution of a government[] policy or custom," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  A plaintiff has "at least four avenues" available "to prove the existence of a municipal's illegal policy or custom": "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

As the Supreme Court noted in the seminal case of *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986), in addressing the issue of municipal liability,

> if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of Section 1983.

Moreover, municipal liability attaches only where the decisionmaker has final authority with respect to the action ordered. *Id.*  In certain circumstances, a *single* decision by a policymaker can constitute official policy. *Id.* at 483; *see*

*also Holloway v. Brush,* 200 F.3d 767, 773 (6th Cir. 2000) (en banc) ("Under appropriate circumstances, even a single act or decision may qualify as an official government policy, though it be unprecedented and unrepeated").  But in any case, acts will only be construed as official policy when they are those of a body or an official "responsible for establishing final government policy respecting such activity." *Id.* (citations omitted). In this context, municipal liability attaches "where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.*

Further, the determination of whether an official has final decision-making authority is a question of state law to be determined by the trial judge. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988).

Defendant's argument that Plaintiff is asserting a *Monell* claim under a theory of *respondeat superior* is simply incorrect.  Plaintiff pled that Defendant Allen was a decisionmaker in Hamtramck, as he had decision-making authority while acting in his capacity as city attorney. ECF No. 12, ¶54.  The question as to whether or not one is a decision maker is one that requires thorough factual development and is not ripe for this stage of the litigation; however, Plaintiff pled enough facts known prior to the parties engaging in discovery, including that Defendant Allen had authority to deny a FOIA request, to issue administrative subpoenas, and to depose private

individuals which establish that he has final decision making authority, consistent with *Pembaur* and its progeny. As stated above, one act alone can create a policy. Here, Allen acted pursuant to a policy of discrimination on the basis of a disability and retaliation because of that disability and the assertion of Constitutional rights. Plaintiff therefore satisfied his requirements at this stage. As a decisionmaker, Defendant Allen made a deliberate choice to discriminate against Mr. Blackwell because of his disability and retaliate against Plaintiff for exercising his First Amendment rights, amounting to a policy pursuant to *Monell*. Allen's conduct, therefore, is attributable to the City of Hamtramck itself. Without relevant discovery, there is no way to determine affirmatively that Defendant Allen is a decisionmaker. Defendant's 12(b)(6) motion should therefore be denied.

III. PLAINTIFF ANTICIPATES THAT DEFENDANT WILL RELY ON A RECENTLY ISSUED UNPUBLISHED MAJORITY OPINION, HOWEVER, PLAINTIFF'S CLAIMS SHOULD NOT BE DISMISSED BASED ON THAT CASE

Plaintiff anticipates that Defendant will argue that Plaintiff's ADA claim should be dismissed based on the recently issued, unpublished, majority opinion in *Jones v City of Detroit,* ___F App'x___; 2021 U.S. App. LEXIS 37757, at *1 (CA 6, Dec. 21, 2021). The majority in Jones held that there can be no *respondeat superior* theory of liability under an ADA claim. However, Plaintiff does not allege only that Hamtramck is vicariously liable as *respondeat superior*. He alleges also

that Hamtramck is directly liable for the conduct of its decision maker, City Attorney

James Allen. See Amended Complaint, ECF 12, ID 122-23, ¶¶54-56, which provide:

> Defendant Allen is an agent of the City of Hamtramck, as he is the
> City Attorney for the City of Hamtramck and engages in decision
> making on the City's behalf, as evidenced by Defendant's denial of
> Plaintiff's FOIA request directed to the City of Hamtramck. As a
> result of Defendant Allen's actions, Plaintiff is being denied the
> benefits of other non-disabled citizens and being subjected to
> discrimination because of his disability. Defendant City of
> Hamtramck, through its agent Defendant Allen, acted intentionally,
> willfully and in reckless disregard of Plaintiff's rights.

That Hamtramck is liable for Defendant Allen's actions when he acts in his

official capacity is aptly illustrated by a Sixth Circuit case involving somewhat of

an inverse defense, *Carten v Kent State Univ*, 282 F3d 391, 396 (CA 6, 2002). In

*Carten*, the plaintiff sued Kent State University and various of its doctors under the

ADA. The doctors moved to dismiss the claim against them because the ADA

imposes its requirements only on public entities, not on individuals. While the

*Carten* Court agreed that individuals cannot be held liable under the ADA, the court

rejected the doctors' argument, observing: "The defendants also argue that Carten's

claims must fail because Title II imposes its requirements only on "public entities,"

42 U.S.C. § 12132, yet Carten wishes to hold responsible the individual doctors, who

are not public entities." However, the court reasoned, "the doctors are public entities

insofar as they represent the state when acting in their official capacity". The court

went on to rule that the doctors were not stripped of their official capacity cloak because they acted unlawfully, and thus were liable in their official capacity.

In the same vein, Hamtramck is liable under the ADA for the actions of Defendant Allen in his official capacity. Thus, Plaintiff's claim cannot be dismissed based on *Jones.*

Furthermore, the Court should decline to follow the Jones majority. Unpublished cases have no precedential value. *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002) ("unpublished cases are not binding precedent"). While unpublished opinions carry no precedential weight, they may carry persuasive weight. *United States v. Webber*, 208 F.3d 545, 552 (6th Cir. 2000). Thus, the court may consider unpublished cases as persuasive authority.

However, the Court should not find the Jones majority persuasive insofar as it ruled that there is no *respondeat superior* liability under the ADA. It has been established by decades of published precedent that there is no individual liability under the ADA. Only public entities may be held liable. But just as all corporate entities, public entities act only through their agents. *See Carten, supra*. Yet under the *Jones* majority's rationale, the public entity cannot be held liable for the ADA violations of its agents, at least the ones who do not enjoy final decision-making authority, and the agents cannot be held liable for their own ADA violations individually. Thus, there is no ADA liability for the ADA violations of the vast

20

majority of a public entity's agents. And while the *Jones* Court appeared to hold open the possibility of a *Monell*-like claim against a public entity, *Jones* at *12-13, *Monell* concerns 42 USC § 1983 cases. Its exacting requirements for holding entities liable for the actions of their individual agents makes sense in the § 1983 context because the individual agents can be sued individually. This same rationale does not make sense in the ADA context, where they cannot.

Indeed, the Court should find persuasive the well-reasoned dissent in *Jones* written by Judge Moore. She persuasively opines that "the Supreme Court has long looked to principles of agency and tort law when analyzing remedial provisions of statutes intended to remedy discrimination." (Citing Univ. of Texas Sw. Med. Ctr., 570 U.S. at 347 among others.) and that "[r]espondeat superior, or vicarious liability, is a "basic agency principle[]" that the Court routinely uses for its interpretation of civil-rights statutes." Judge Moore further pointed out that there is a presumption that *respondeat superior* applies to statutes designed to remedy discrimination unless there is a clear indication otherwise and contrary to the majority's opinion, *Gebser v Lago Vista Indep Sch Dist*, 524 US 274 (1998) did nothing to rebut the presumption in an ADA claim. She also raised the legitimate concern that refusing to recognize *respondeat superior* in ADA claims would disincentivize cities from training its officials to be sensitive to the needs of disabled persons. Accordingly, the Court should decline to follow the unpublished *Jones* majority.

WHEREFORE, Defendant's FRCP 12(b)(6) motion (ECF No. 15) should be denied.

Respectfully submitted,

*/s/ Hannah R. Fielstra*
Hannah R. Fielstra (P82101)
**Ernst Charara & Lovell, PLC**
Counsel for Plaintiff

Dated: January 20, 2022

**LOCAL RULE CERTIFICATION**: I, Hannah Fielstra, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

Respectfully submitted,

/s/ Hannah R. Fielstra
Hannah R. Fielstra (P82101)
Attorney for Plaintiff
Ernst Charara & Lovell, PLC
645 Griswold Street, Suite 4100
Detroit, Michigan 48226
Phone: (313) 965-5555
Fax: (313) 965-5556
hannah@ecllawfirm.com

Dated: January 20, 2022